### D. J. CLARK v. STATE.

No. A-9459. Sept. 9, 1938.
(82 P. 2d 844.)

Mathers & Mathers, of Oklahoma City, and Alvin Moore, of Cheyenne, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J. The charging part of the information in this case is as follows:

"That one D. J. Clark late of the county aforesaid on or about the 29th day of December, 1937, in the county of Beckham and state of Oklahoma, did then and there unlawfully, knowingly and wilfully sell one pint of spirituous, vinous, fermented malt and intoxicating liquor to one Leland Essary, contrary to," etc.

A demurrer to the information was duly interposed on the following grounds: That the facts stated do not constitute a public offense; that the same is duplicitous in that more than one offense, if any, is charged in the information; and that it does not impart sufficient information to enable the defendant to properly prepare his defense. Which was overruled, exception reserved.

Upon his trial the jury returned their verdict finding: "the defendant guilty as charged in the information and fix his punishment therefor at a fine of $50 and 30 days in the county jail."

Motions for new trial and in arrest of judgment were duly filed, and on January 29, 1938, overruled.

To reverse the judgment rendered on the verdict he appeals, and assigns as error the overruling of the demurrer to the information, and questions the sufficiency of the evidence to sustain the verdict.

The state relied for this conviction upon the testimony of two witnesses.

Leland Essary testified that he had lived in Clinton the past 25 years, was in the dairy business, on December 29th had occasion to be in Elk City, and that evening about 10 o'clock stopped at the Tower Tavern on the northeast side of the city, had lunch served by a man and woman, and then asked them if they had anything to drink there; they said no, a fellow there said, "I might rustle you a drink." He talked to him, and the fellow left, that he went out and got in his car, and backed it up to the filling station in the same building, went in to get some cigarettes; the man there said he would have to go and get them, came back to his car and talked to Mr. Rice, who was in the electric appliances business at Clinton. Some fellow brought the cigarettes out there, and charged him 20 cents. Then the other fellow who had talked to him came and delivered a pint of liquor and he paid him for it. That he did not know the man who delivered the liquor, but it was not the man who delivered the cigarettes; that he opened the bottle of liquor and passed it to his friend, and a fellow reached in and grabbed it. That the man he talked to, or the man who delivered the bottle, was not the defendant.

M. Y. Baker testified that he was a constable; knew the defendant, Clark, and knew Leland Essary; that he saw the defendant and Mr. Essary at the Tower Tavern that night about 9 o'clock; that Mr. Essary came out of the cafe, went to his car and drove around in front of the filling station, went in, came out and went back to his car. A man came from another car to Mr. Essary's car and talked to him; a party brought some cigarettes to Mr. Essary; that he saw the defendant come out of the filling station, go south about 100 yards, and then came back with a pint bottle sticking out of his left pocket, and went to Mr. Essary's car, and handed the bottle to him. Mr. Essary paid him, and the defendant walked into the filling station and sat down; that Orlin Jones, chief of police, and Mr. Shope drove up and were sitting in their car, and he got out of his car and walked to their car and said, "I want to make an arrest here," then he walked over to Mr. Essary's car, he had taken the top off the bottle, and told Mr. Essary he was under arrest, then he took the bottle and pulled the switch keys from the car, then went into the station and told the defendant he was under arrest.

On cross-examination he stated that he took Mr. Essary to the city jail, then took a cash $22.50 appearance bond for drinking in a public place, and let him go home; that he never appeared in court; that when a man does not appear they plead him guilty and take his cash deposit to pay the fine and costs; that he did not know that it was liquor until he took the bottle from Mr. Essary; that he had Mr. Green with him in his car.

On the part of the defense, Leland Essary testified that the door of his car was open, when the fellow slid the bottle in on the floor of the car; that he was a little fellow, much smaller than the defendant, Clark; that he was positive the defendant Clark was not the man that delivered the whisky, and was not the man who had agreed to deliver the whisky to him.

Orlin Jones testified that he was chief of police of Elk City, and deputy sheriff; that with Bill Shope, he drove out to the Tower Tavern, and was there when Constable Baker arrested Mr. Essary; that he parked his car facing north and there was a coupe parked at their right, facing east, and Constable Baker was in a coupe west, and the defendant, Clark, was sitting on a bench in the filling station; that two men came and got in the car on the east side, and they sat there about 15 minutes when Constable Baker came up and asked them to go with him to shake the coupe down, and he asked him what for; Baker said, that some one delivered some whisky to that car, and he said he didn't know anything about it, and refused to go. That he knows the defendant, D. J. Clark, and did not see him approach that coupe while they were sitting there.

On cross-examination he stated that he was there about 25 minutes before Baker approached him and asked him to go with him to shake the coupe down.

Walter A. Green testified that he is a farmer, living seven miles northeast of Sayre; that he went with M. Y. Baker to the Tower Tavern that night; that while they were sitting in the car in front of the filling station the defendant came out and went to the white house in the next block, went in, then came back to the filling station; that a car honked and he came out to the car, then went back in and came back with a package of cigarettes; that he was sitting with Mr. Baker at the time, and that was all he saw.

On cross-examination he was asked:

"Q. Did you see this Ford coupe parked over a little east of you there? A. The third car. Q. Did you see Clark go up to that car? A. Saw him bring a package of cigarettes up there? Q. You didn't see anything else?"

The record shows at this time the county attorney asked leave of court to have a conference with this wit-

ness. Leave granted. The county attorney and witness leave the courtroom.

The objections interposed on the part of the defendant were:

"Overruled for the reason there were no objections at the time the court granted the request until the time the county attorney was returning from the conference with the witness."

The record shows that after the conference there were no further questions asked by the county attorney.

As a witness in his own behalf, D. J. Clark testified that he lives in Elk City, and that he is the owner of the Tower Tavern; that the front part is the filling station, and the only door to it is the front door; that the partition between the filling station and the cafe is without a door; that he had rented the place to Mr. Long and his wife; that on the date alleged he was there that evening and Mr. Long said he was sick and had to go to bed for an hour or two, and asked him to stay in the filling station while he took a rest; that he was talking in there to Mr. Rice, from Clinton, when Mr. Essary came up, and wanted a package of cigarettes, he told him that he did not have them there, but had some in a machine in the cafe, and he went to the cafe, got a package of cigarettes and went out to the car and gave them to him; that he did not know Mr. Essary at that time; that he did not sell in any manner any liquor to the witness Mr. Essary, had none in his possession and none was sold to Mr. Essary so far as he knew.

On cross-examination he stated that he went south to a white house where Mr. Long sleeps, and woke him up, but did not bring back any liquor; that when he came back Mr. Essary came in and wanted some cigarettes and he went to the cafe and got a package; that Mr. Rice was sitting in the car with him when he delivered the cigarettes.

Asked if he had ever been convicted of a violation of the prohibitory laws of the state, he answerd that when he was 18, he together with another boy were arrested for having a half pint of alcohol.

When the state rested, the defendant interposed a demurrer to the evidence and moved for a directed verdict of acquittal, and again at the close of all the evidence renewed his motion for an instructed verdict, which were overruled and exceptions allowed.

It cannot, we think, be successfully maintained that the information gives to the defendant full information of the nature and cause of the accusation against him, to which he. is entitled under section 20, art. 2 of the state Constitution, Okla. St. Ann. Const. art. 2, § 20. Nor does it conform to the requirement of the statute that the information must be direct and certain as it regards the offense charged. Sec. 2884, St. 1931, 22 Okla. St. Ann. § 402, Proc. Crim.

The defendant in a criminal case, in view of his presumption of innocence, is not only entitled to know from the allegations of the information what facts the prosecution consider as sufficient to make him guilty of the offense charged with reasonable particularity, so as to enable him properly to make his defense thereto, but he is also entitled to demand that the information should charge the essential facts so specifically that the judgment in the case will be a complete defense to any subsequent prosecution for the same offense.

In this case the information was verified by the witness, M. Y. Baker. The testimony of this witness shows that he knew when he verified the information that the alleged intoxicating liquor was whisky. And when the information was drawn, verified and filed, the alleged intoxicating liquor was known to the prosecution to be whisky.

In the case of Byxbee v. State, 29 Okla. Cr. 9, 231 P. 898, it is said:

"There are many kinds of intoxicating liquors that come within the prohibition of the statutes, such as ale, wine, beer, extracts, alcoholic medicines, certain tonics, several kinds of commercial alcohol and many kinds of fermented beverages. The accused is entitled to know the kind of liquor he is charged with making, selling, or transporting illegally, in order that he may fairly prepare his defense. 14 R.C.L. 187, and cases cited."

The charge must be stated with as much certainty as the circumstances of the case will permit.

In Cole v. State, 16 Okla. Cr. 103, 180 P. 713, the syllabus reads as follows:

"An information charging that defendant 'did wilfully and intentionally manufacture certain spirituous, vinous, fermented, or malt liquors, or an imitation or substitute therefor,' is bad for duplicity."

The proper allegation in an information charging a sale is that the defendant did sell or barter intoxicating liquor, naming or describing it.

It follows from what has been said that the demurrer to the information in this case should have been sustained.

It is also contended that the evidence is insufficient to support the verdict.

The testimony on the part of the state was from two witnesses. The state's case rests entirely upon the identity of the man said to have sold the pint of whisky. The only testimony tending to connect the defendant with the sale was that of the prosecuting witness, Baker. The first of the two witnesses called by the state was Leland Essary, named in the information as the purchaser of the alleged intoxicating liquor, and he testified that the defendant, Clark, was not the man that sold and delivered

the whisky to him, and in this he is corroborated by the testimony of the witness, Green, who was with the prosecuting witness, and by the testimony of the witness, Jones, chief of police.

As a witness on his own behalf the defendant positively denied making the sale of the whisky or having anything to do with it.

In the case of Jackson v. State, 12 Okla. Cr. 446, 158 P. 292, this court held:

"A judgment of conviction cannot be had upon testimony introduced for the state, when that testimony comes wholly from two witnesses of equal credibility, one testifying to the guilt, and the other testifying to the innocence, of the accused."

In the opinion it is said:

"It is the duty of the state to establish beyond a reasonable doubt that the person on trial is guilty and that, too, by proper and credible testimony. The state cannot put on two witnesses and prove by one of them that there is a probability of defendant's guilt, and another that he is innocent absolutely, and expect this court to uphold the judgment. One charged with crime is entitled to a fair and impartial trial, and to be convicted according to the forms of law; and it is the duty of the trial court to see that this is done."

Our Procedure Criminal provides:

"If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant." Sec. 3090, St. 1931, 22 Okla. St. Ann. § 850.

Carefully considering all the testimony in the case we are convinced that the trial court should have advised the jury to acquit the defendant when the state rested, because as a matter of law the evidence was insufficient to warrant a conviction.

For the reasons stated, the judgment of the lower court is reversed.

DAVENPORT, P. J., and BAREFOOT, J., concur.