## LEON FLAUHAUT et al. v. STATE.

No. A-9588. July 7, 1939.
(92 P. 2d 587.)

418

E. Moore, of Coalgate, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Marvin Balch, Co. Atty., of Coalgate, for the State.

BAREFOOT, J. The defendants were jointly charged in the county court of Coal county with the crime of having unlawful possession of nonintoxicating beverages without the payment of a license, for the purpose of bartering, selling and giving away the same. They were convicted, and their punishment assessed at a fine of $50 and 30 days in the county jail, and they have appealed.

In the first place we find that no brief has been filed, either by the defendants or the state. Under the rules so often announced by this court, it is only necessary that we examine the record, and unless some fundamental error has been committed, the judgment will be affirmed.

We have examined the record, and after such examination we are of the opinion that the judgment and sentence in this case should be set aside, and the case reversed.

The facts in the case, as revealed by the record, are that defendants were husband and wife. They lived in Coalgate, Coal county. The officers searched their home on the 18th day of September, 1937. They testified they found 40 quarts of beer in the celler of defendants' home, and that all of it was poured out and destroyed by the officers at the time, except about 6 bottles, which were brought to the sheriff's office. That labels were placed thereon, and it was put in the vault. Before placing in the vault, the officer testified:

"Q. Did you put anything in this beer? Mr. Moore: We object to that as leading. Judge Thornsbrough: What did you do to the beer? A. When we brought it in we put tablets in it; I don't remember the name of it. Q. To refresh your memory, was it bichloride of mercury? Mr. Moore: We object to his refreshing his memory. He is a deputy sheriff; he knows what he testifies about. Judge Thornsbrough: The chemist will be the best one as to what it was. He said he did not know what it was he put in it. Q. What did you do when you got back to the sheriff's office with this beer? A. We put these tablets in the beer. Q. Do you remember how many you put in a bottle? A. Two, I believe. Q. To a quart bottle? A. Yes, sir."

This evidence as to the putting of tablets in the bottles was corroborated by the other officers who assisted in the search. The chemist, who examined the bottles brought to him by the sheriff, testified that they showed an alcoholic content of 4.1 per cent. by volume, and 3.2 per cent. by weight. The evidence that these were the same bottles is very meager. There was no evidence of any kind or character for the consideration of the jury, as to why the tablets were placed in the beer by the officers, or what they contained, or what effect they would have in the analysis of the same. As before stated, no search warrant was introduced, and no evidence as to why it was not so introduced. There

was no evidence as to who was present at the time the search was made.

The state placed upon the witness stand Matt Fautt. He was evidently placed upon the stand for the purpose of proving that he had purchased beer at the home of defendants prior to the search, but his testimony was to the opposite. He testified that he did not have any recollection of ever buying any beer at defendants' home. When his testimony was completed the court, over the objection of defendants, permitted the county attorney to place two witnesses upon the stand to impeach the witness Fautt, whom he had offered as a witness, and they each testified that he, in their presence, had said he bought beer from Mrs. Flauhaut. This evidence was admitted over the objection of defendants. The court in his instructions to the jury in no way limited the effect of this testimony as being permitted only as affecting the credibility of the witness Fautt. Under the law, and the decisions of this court, this was prejudicial error, for which this case will have to be reversed.

In the case of Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57, 68, this court, in a very elaborate opinion, not only discusses the principle here involved, but cites and quotes from many authorities from other states, and the best recognized text writers. In the opinion of the court, after recognizing the rule that under certain conditions where a witness had deceived the party calling him, to the injury of such party, it would be manifestly unjust to hold the party to be bound by such deception and to prevent him from relieving himself of such injury, says:

"But this rule is subject to certain conditions: First. The party must be surprised at the testimony of the witness sought to be so impeached, and this surprise must exist as a matter of fact; that is, it must be based upon such facts as would give the party reasonable ground to believe that the witness would testify favorably to such party. If the facts were such that the party had no reasonable ground to believe, when he placed such witness on the stand, that

the witness would so testify, then no surprise could exist at the failure of the witness to give such testimony, and statements previously made by the witness, contradicting the testimony given, would not be admissible. Second. It is not enough that the witness failed to testify favorably to the party calling him, in order that previous contradictory statements made by such witness may be introduced in evidence, but the witness must have testified to facts injurious to the party calling him before he can be so impeached. In other words, such contradictory statements are permissible alone for the purpose of impeaching the witness, and are not original substantive evidence against the adverse party. Third. When such contradictory statements are admitted in evidence, under proper conditions, the court should clearly inform the jury that such contradictory statements can only be considered by them for the purpose of affecting the credibility of the witness, and that it is for the jury alone to determine whether they do have this effect or not, and that such contradictory statements are in no sense to be considered as original evidence against the adverse party." Paris v. United States, 5 Okla. Cr. 601, 115 P. 373; Broshears v. State, 17 Okla. Cr. 192, 187 P. 254.

This case is the first presented to this court involving the terms of the "Beer Bill," and in attempting to prosecute a person for failure to procure the license as therein prescribed. Inasmuch as this record presents very meager facts, and had not been briefed, we deem it inadvisable to discuss the terms of the information. It would probably have been better for the county attorney in this case to have filed his charge under the old statute for the unlawful possession of intoxicating liquor, and submitted his proof upon this issue.

For the reasons above stated, the judgment of the county court of Coal county is reversed.

DOYLE, P. J., and DAVENPORT, J., concur.