## GATES v. STATE.

No. A-11244.   Feb. 1, 1950.

(214 P. 2d 451.)

Wm. H. Lewis, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace. Asst. Atty. Gen., for defendant in error.

POWELL, J.   The defendant, Arnely Gates, was charged in the district court of Oklahoma county with the crime of robbery by force or fear, found guilty by a jury who could not agree on his punishment, and was sentenced by the court to serve seven years in the State Penitentiary.

It is charged that defendant, a negro boy 19 years of age, by the use of force and threats of death, did feloniously take and steal from Mrs. Myra Ellen Yell, a leather purse, containing $37 in money.

The state used three witnesses.   Mrs. Yell testified that she lived at 814 North Geary, in Oklahoma City. About 12 midnight or 12:30 on Sunday morning, August 22, 1948, she left her home in response to a telephone call from her husband, and started walking to Tommy's Tap Room in the 200 block on Harrison Avenue.

As she went out of her house she noticed someone coming, but did not pay much attention—did not look at him, and crossed the street. She saw the party go down the other side of the street, and turned and saw him crossing the street, right under the light, about half a block away. She went about a block and a half further, and in the 300 block East Seventh street, someone came up behind her and said, "I will kill you," and grabbed her purse, but made no attempt to do her any harm. She testified that she gave the police a description of the party who had taken her purse; that he wore a dark hat, dark trousers, a "T" shirt with brown and yellow stripes, and that, "I know he didn't have on light shoes, because I seen him under the lights there, and they were dark." Mrs. Yell had identification papers in her purse, and recovered the purse and papers the following day, but the money, $38 or $40, was gone. She left town on Monday, and was away a week, and the following Monday she was called to the police station, and positively identified the defendant. He was dressed identically the same as when he snatched her purse, and she identified him by his voice and his looks. On cross-examination she was asked if she noticed what kind of shoes he wore, and she answered: "No, I didn't look down that far."

Police Officer Fred L. Ramsey merely testified that he answered a call at 814 North Geary on the date in question, talked with Mrs. Yell, and got a description of the party who had allegedly committed the crime.

Police Officer E. E. Jones testified that he arrested the defendant in the 300 block East Second street on Monday, and that defendant made a statement of his whereabouts on the night the crime was alleged to have been committed; that he checked that statement and that it was not true. On cross-examination he testified that de-

fendant had been arrested for fighting, larceny, and loitering, and fined in the police court on each charge.

Wayne Harbolt, also a police officer, testified that he conducted the "show-up" at the time defendant was identified by Mrs. Yell, and that she was positive in her identification. This concluded the testimony in chief of the state.

The defendant testified in his own behalf that he quit school in the ninth grade, had been working at restaurants, admitted the arrests testified to by the officer, and paying fines therefor; and positively denied that he snatched the purse of the prosecuting witness, or that he had ever seen her until the preliminary hearing. He testified that he went to the Iris Theatre in the 300 block East Seventh street at 11:30 Saturday night, left there about 2 a. m., went to the Chicken Shack "out on Eastern" with one George Diggs, stayed about 30 minutes, then went home with George and spent the remainder of the night, and was arrested Monday evening. He testified that he was wearing a white shirt on Saturday night and Sunday morning, brown trousers and hat, and black and white shoes. He was wearing a brown and yellow striped "T" shirt when arrested. Defendant offered no other testimony.

On rebuttal Wayne Harbolt denied that in his presence Officer Baker had told defendant that he would get him a suspended sentence if he would plead guilty to this charge, as testified by defendant. E. E. Jones testified that in checking defendant's story of his whereabouts the night the crime was committed, he "checked the Chicken Shack" and talked with George Diggs.

In his petition in error defendant sets out 13 assignments of error, but in his argument groups them under two assignments.

Defendant first contends that the court should have sustained a demurrer to the evidence, and, overruling the same, should have directed the jury to return a verdict of not guilty, arguing that the state's case rests entirely upon the identification of the defendant by the complaining witness; and cites two cases in support of his contention: Clark v. State, 65 Okla. Cr. 56, 82 P. 2d 844, and Jackson v. State, 12 Okla. Cr. 446, 158 P. 292.

In the Clark case the state's witnesses disagreed as to the facts, and the court held that the trial court should have advised the jury to acquit the defendant when the state rested; but further held that the information was not sufficient, and the demurrer to the same should have been sustained. The case of Jackson v. State, supra, is quoted with approval in the Clark case. There the state used only two witnesses, and in commenting on the testimony of the second witness, the court said: "In fact, he contradicted the first witness in toto."

This court has consistently held to the rule stated in the case of Sheehan v. State, 83 Okla. Cr. 41, 172 P. 2d 809, 810, cited by the state, that:

"Before Criminal Court of Appeals will interfere with verdict of jury on ground that evidence was insufficient to sustain conviction, there must be no competent evidence in the record upon which the verdict could be based."

The evidence here, although not free from doubt as to identification of defendant, was sufficient to warrant submission of the case to the jury, and the jury found the defendant guilty.

Defendant's second contention is that remarks of the assistant county attorney in his closing argument, and the remarks of the trial judge were prejudicial to the defendant.

Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectional remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by the opposing counsel.

The argument of counsel to the jury is not shown in the record. There appears in the record the following:

"During the argument of the assistant county attorney, the following occurred:

"Mr. Lewis: Comes now the defendant and objects to Mr. Mounger, the assistant county attorney, in his closing argument to the jury in the trial before this court, wherein he has used substantially the following language: 'If you turn this defendant loose, Bill Lewis will be down in my office tomorrow morning and tell me "I have fooled another jury"', that the same is highly prejudicial, not proper, and ask this court to declare a mistrial by reason of such highly prejudicial remarks.

"The Court: Let the record show the statement was made in counsel's argument wherein he told the jury about clearing a man who had robbed a bank at Britton, Oklahoma.

"Mr. Lewis: That is true, and in that connection I stated that the defendant was positively identified by a witness, but notwithstanding that positive identification, the jury cleared him.

The Court: Application for mistrial is denied, with exceptions.

"Mr. Lewis: Comes now the defendant and moves the court to admonish the jury not to consider * * * the

remarks just made by the county attorney in connection with W. H. Lewis coming in his office in the morning and making the statement, 'Well I fooled the jury again', or words to that effect being highly improper, prejudicial, and does not constitute proper argument.

"The Court: Now I am going to rule on that now. I don't find any fault with Mr. Mounger's argument, but I am going to, in spite of that fact, instruct the jury to disregard the remarks about what Mr. Lewis might do. I say that, you understand, gentlemen, without any sense of criticism of the county attorney. You understand you will disregard those remarks, please."

We have repeatedly stated that absolute fairness should characterize every word and action of a judge, and if this court were doubtful as to whether this action of the trial court in this instance was prejudicial to the defendant, that doubt would be resolved in favor of the accused. But, after reviewing the entire record, and the circumstances surrounding the incident in question, it appears that the assistant county attorney was merely answering the argument of counsel for defendant, and the trial court certainly took that view of the matter. Great latitude should be given to both counsel for the state and the defendant and a wide freedom of expression is authorized in presenting their arguments.

In our opinion the record does not support defendant's second assignment of error. Wilson v. State, 24 Okla. Cr. 332, 217 P. 885; McDonald v. State, 59 Okla. Cr. 318, 58 P. 2d 345; Trotter v. State, 77 Okla. Cr. 368, 141 P. 2d 812.

Our conclusion is that the punishment assessed by the court is excessive, and that owing to the close question as to the sufficiency of the evidence, and the age and background of the defendant, justice requires a modification of the judgment and sentence of seven years

to a term of five years in the State Penitentiary. The judgment of the district court of Oklahoma county is so modified, and as thus modified, is affirmed.

JONES, P. J., and BRETT, J., concur.