People of the State of Illinois, Plaintiff-Appellee, v. James A. Nicholson, Defendant-Appellant, and Albert Andrew Finnell, Defendant.

### Gen. No. 64–48.

Second District.

February 16, 1965.

. Eugene F. Parker, Hart & Banbury, of Aurora, for appellant.

Charles L. Hughes, State's Attorney, and John G. Plain, Assistant State's Attorney, both of Aurora, for appellee.

DAVIS, J.

James A. Nicholson, defendant-appellant, and Albert Andrew Finnell, herein called Finnell, were indicted for armed robbery. Finnell entered a plea of guilty and applied for probation, while appellant entered a plea of not guilty, was convicted by a jury in the Circuit Court of Kane County, and was sentenced to a term of not less than two, nor more than six years in the penitentiary.

Appellant brought this appeal to review the verdict, judgment, and sentence. He contends that the evidence did not establish his guilt beyond a reasonable doubt and that the Court erred in overruling objections to the testimony of certain prosecution witnesses relative to the purchase of an automobile. These assignments of error necessitate a review of the evidence and in so doing, this Court has considered the entire record.

The Main Super Market in Aurora was robbed by a lone bandit about 8:35 p. m., on November 19, 1963. The robber entered the store, approached Iva Helena Draper, the cashier, and asked her if she saw his gun, and upon an affirmative reply, said to her, "Do as I tell you to and you won't be hurt . . . take the money from the register and put it in the bag." He also told her that he didn't want any checks or loose change.

Mrs. Draper placed approximately $508, consisting of one, five and ten dollar bills, in a paper bag and handed the bag to the robber, who then told her not to move until he was out of the store. During the robbery, the robber grasped the revolver, partially

covered by a newspaper, in his right hand, and held a handkerchief over the lower part of his nose and his mouth, with his left hand.

When the bag of money was in his possession, and after his warning to Mrs. Draper, he left the store. As soon as he was outside, Mrs. Draper reported the robbery to Dennis Blevins, herein called Blevins, but the robber got away before any store personnel reached the outside parking area. Neither the gun, nor the money, was recovered.

Mrs. Draper and Blevins saw the robber at the store. Blevins, who was sweeping some distance away, did not know a robbery was being committed. Mrs. Draper described the robber as being six feet one or two inches in height, of medium build, of fair complexion, and as wearing a dark coat or jacket. Blevins stated that the robber was fairly tall, of light complexion, with large frame, and that he was wearing blue denim apparel. Neither Mrs. Draper nor Blevins could positively identify the appellant as the robber. After being shown pictures of the appellant, and while on the witness stand, Mrs. Draper stated that the appellant fit the general description of the person who robbed her.

Mrs. Draper was five feet eleven and one-half inches tall. Testimony was offered on behalf of the appellant that his height was five feet eleven and one-fourth inches. However, at the trial, when Mrs. Draper, without high-heeled shoes, and appellant, stood back to back, the appellant appeared to be an inch or two taller than she.

Testimony was offered on behalf of appellant relative to a scar on his forehead and a scar on his lip, neither of which were observed by Mrs. Draper. However, the scar on the lip would have been covered by the handkerchief and the scar on the forehead, while visible, could have been concealed by the angle of appellant's

head during the robbery, or could have been overlooked by Mrs. Draper in the excitement of the occasion.

Finnell, an ex-bartender, nicknamed Boozey, who had turned to painting for a livelihood, went to the home of his employer, Tony Hoffman, with Harold Yaeger, a fellow employee, about 8 a. m., on November 19, 1963. The appellant arrived there about 9 a. m. These men, along with Larry Tigoneur, another employee, and Tony Hoffman, the employer, made up a fivesome, which devoted the day, until sometime between 3 p. m. and 5 p. m., to bibulous camaraderie. During the day, at the suggestion of Finnell, Hoffman employed the appellant, who had lived with his brother and a friend the few days he had been in Aurora. The above named fellow employees will be referred to herein by their respective surnames.

According to the testimony offered on appellant's behalf, the appellant had money prior to the robbery. Yaeger testified that the appellant give Finnell $10 or $15 to "get some whiskey"; and that he then had as much as $100, but not as much as $200. Yaeger, a fellow worker and drinking companion of Finnell, also testified that Finnell's reputation for truth and veracity was bad. The jury saw and heard both Finnell and Yaeger when they testified.

After leaving Hoffman's house, Yaeger, Finnell, Nicholson and Tigoneur made a tour of Aurora taverns and all bought drinks. At about 8 p. m., Finnell and Nicholson left the Aloha Lounge together and came back about one-half hour later.

Finnell testified that appellant was wearing a blue jacket and slacks at the time of the robbery; that at appellant's suggestion, he drove Hoffman's station wagon from the Aloha Lounge to the house of appellant's brother; and that the appellant wanted to get something from his suitcase. They went inside the house and Finnell talked to the wife of the appellant's

365

brother, while appellant went to another room alone; when they returned to the car, Finnell drove to the side and rear of the Main Super Market, parked the wagon, and appellant went in; he was inside about five minutes and returned carrying a paper bag. He then told Finnell to get out of there; that "he knocked that place off." Finnell drove back to the Aloha Lounge and parked the car in the parking lot; appellant gave him money from the bag, consisting of one, five and ten dollar bills, and they went back into the Aloha Lounge.

Later during the .evening, the appellant took $10 from a large roll of bills and gave it to Robert Ritter in payment of a loan Ritter had made to him three days prior to the robbery. Appellant told Ritter that he won the money playing poker and that he had been playing that day. There was no evidence to corroborate this. Ritter testified that appellant was then wearing a tan sports jacket.

After the robbery, appellant purchased a used car for $140, and paid for it with bills which, "might have been, tens, twenties or fives." Later appellant, Finnell, Yaeger and Tigoneur went to Cicero in appellant's car where they visited three additional taverns and returned to Aurora on the morning of November 20th.

On the evening of November 20th, appellant and Finnell again went to Cicero and when they returned to Aurora, appellant stayed at Finnell's residence, where they were arrested at about 1:30 a. m., on November 21st. Upon interrogation by the police, Finnell admitted his participation in the robbery.

Appellant urges that this evidence did not establish his guilt beyond a reasonable doubt and that he was convicted solely on the uncorroborated testimony of an accomplice, Finnell. Such contention is without foundation.

■■■■■■■■■■■■■■■

The uncontroverted testimony is that the appellant had been in Aurora only a few days before the robbery; that he got a job the day of the robbery, but had not yet gone to work; that he was living with his brother and a friend; that he borrowed $10 from tavern keeper Ritter three days before the robbery and repaid the loan from a large roll of bills after the robbery; and that after the robbery, appellant bought a used car which cost $140, and spent money freely for drinks and entertainment. Blevins and Mrs. Draper testified that the robber wore a blue or dark jacket and corroborated Finnell's testimony in this respect.

The appellant offered no alibi witnesses and none to corroborate that he had money prior to the robbery or that he won money playing poker on November 19th; and he offered no testimony that he did not go to his brother's house before the robbery.

■■ A positive identification by one witness is sufficient for conviction. People v. Mack, 25 Ill2d 416, 421, 185 NE2d 154 (1962); People v. Crenshaw, 15 Ill2d 458, 461, 155 NE2d 599 (1959); People v. Moore, 52 Ill App2d 27, 33, 201 NE2d 619 (1st Dist. 1964); People v. Hartnett, 49 Ill App2d 357, 363, 199 NE2d 671 (1st Dist. 1964). Finnell positively identified the appellant as the robber and his testimony was corroborated. The jury not only heard the testimony as to identity, but also saw the appellant in Court. It was in a superior position to evaluate the discrepancies in the description of appellant, relative to his height, weight, complexion, and wearing apparel, and this Court will not say that the jury was required to regard such discrepancies as sufficient to create a reasonable doubt as to appellant's guilt. People v. Evans, 25 Ill2d 194, 200, 201, 184 NE2d (1962); People v. Hartnett, 49 Ill App2d 357, 363, 364, 199 NE2d 671 (1st Dist. 1964).

Further corroboration of Finnell's identification is found in the fact that Mrs. Draper placed approximately $508, which consisted of one, five and ten dollar bills, in a paper bag at the robber's direction. When appellant came back to the car, announced that he had held up the market and told Finnell to get out of there, he carried a paper bag filled with bills, and the bills which he gave Finnell were of these denominations.

■ ■ The jury was satisfied by the testimony of the accomplice, Finnell, as corroborated by other witnesses, that the appellant was guilty beyond a reasonable doubt. The uncorroborated testimony of an accomplice as to the identity of the appellant, if it satisfied the jury beyond a reasonable doubt, is sufficient to sustain a conviction of a felony. People v. Williams, 19 Ill2d 171, 176, 166 NE2d 568 (1960); People v. Neukom, 16 Ill2d 340, 346, 158 NE2d 53 (1959); and People v. Todaro, 14 Ill2d 594, 602, 603, 153 NE2d 563 (1958).

■ ■ While we recognize that the testimony of an accomplice is attended by infirmities, which require caution in relying upon it alone, nevertheless, a conviction may be based on such uncorroborated testimony, if it is of such character as to convince the jury beyond a reasonable doubt of the guilt of the accused. We have held that these considerations go to the weight of the evidence and the credibility of the witnesses. The jury saw and heard the witnesses and found the appellant guilty beyond a reasonable doubt. We cannot say that such degree of proof was lacking. People v. Todaro, 14 Ill2d 594, 602, 603, 153 NE2d 563 (1958), and People v. Rudnicki, 394 Ill 351, 357, 68 NE2d 723 (1946). Also, "a conflict in the evidence does not itself establish a reasonable doubt, and a jury verdict based on credible and substantial evidence is not rendered reversible by the fact that there

was other evidence in the case which might, if believed, have resulted in a different verdict." People v. Neukom, 16 Ill2d 340, 347, 158 NE2d 53 (1959).

Appellant also erroneously contends that the trial court erred in overruling appellant's objections to testimony that appellant purchased a used automobile after the robbery. Facts are admissible in evidence which naturally and logically tend to prove or disprove the facts in issue. "It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source of money is not traced." United States v. Jackskion, 102 F2d 683, 684 (CCA2d 1939). Also, see People v. Link, 365 Ill 266, 286 and 287, 6 NE2d 201 (1937); Gates v. People, 14 Ill 433, 438 (1853), and Wigmore on Evidence (Third Edition) section 154.

In Commonwealth v. Mulrey, 170 Mass 103, 49 NE 91 at page 94 (1898), Mr. Justice Holmes stated: "The evidence by itself, of course did not prove criminal conduct. But it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are provided, and, in turn, may corroborate the conclusion which would be drawn from other facts. Commonwealth v. O'Neal, 169 Mass 394, 48 NE 134. It is possible that Mulrey may have had an independent fortune from which his deposits came; but that was open to him to prove if he saw fit, and was not the probability with regard to one who was working in his place and for his pay. The evidence was properly admitted, in connection with independent evidence tending to show a successful fraudulent conspiracy between Mulrey and Finneran." Also, see Attorney General v. Pelletier, 240 Mass 264, 134 NE

407, 422 (1922); and Commonwealth v. Locke, 338 Mass 682, 157 NE2d 233, 238 and 239 (1958).

The possession of money by appellant after the robbery, standing alone, could not prove his criminal conduct, but it was one of other accompanying circumstances which tended to show such conduct. If appellant had won the money playing poker or had obtained it other than by robbery, he had the chance to offer such proof.

 This case was well tried by the Court and counsel, and the jury was properly instructed. Appellant's contention that the evidence is not of such clear and convincing nature as to establish his guilt beyond a reasonable doubt, ignores the fact that it is within the province of the jury, as the trier of fact, to believe certain witnesses and disbelieve others. People v. Arnold, 27 Ill2d 294, 296, 189 NE2d 241 (1963) and People v. Wilson, 52 Ill App2d 304 at 313, 202 NE2d 103 (1964).

There is no reason why this Court should substitute its judgment for that of the jury. The judgment of the trial court is therefore affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J. concur.