William Y. HAMMONS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16161.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., Paul Crowe, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant was charged, tried by a jury, and convicted in the District Court of Oklahoma County, Oklahoma of the charge of Second Degree Burglary, After Former Conviction of a Felony in Case No. CRF–70–657, and sentenced to a term of fifteen (15) years imprisonment, from which judgment and sentence, a timely appeal has been perfected to this Court.

On the trial, James R. Dunn, Jr. testified he was the owner of Broadway Texaco at 14th and Broadway in Oklahoma City, Oklahoma County, Oklahoma on the date in question, January 30, 1970, and on that date he secured the building at approximately 7:00 p. m. He testified he returned to his building at 8:00 a. m. the following morning and found the padlocked door had been forced open and that among other things, a coin-operated cigarette machine had been removed from the building without his permission.

Joe Berousek testified he was manager of the B & B Vending Company and that his firm owned and had placed the coin-operated cigarette vending machine in question in the Texaco station, and he identified the recovered vending machine at the Oklahoma City Police Department by serial number.

Jesse Lee Harris testified he was married and lived with his wife at 838 Northeast Park Street in Oklahoma City, that he is employed at Western Electric, and is the nephew of the Appellant. Harris testified he lent his car to his uncle, the Appellant, at approximately 6:00 or 7:00 p. m. on January 30, 1970, and that his uncle returned the car approximately three hours later, although Harris was not home at the time. Harris testified that when he returned home at approximately 10:00 p. m. he went out to his car, there was a cigarette machine in the trunk, and after a brief discussion with his uncle and another unnamed person, "We took the machine in the house." Harris stated he then left his

house, and when he returned police officers were present; upon questioning, he told officers the cigarette machine was his. Harris related he was then taken into custody and was questioned by a detective the following morning. He testified he told the detective it was his car and he had the machine, and that his uncle was with him when he got the machine. He then stated his uncle did not break into the machine and did not say he took it, but took him to the location where the machine came from, a filling station between 13th and 14th on Broadway.

On cross-examination, in response to a question as to whether or not he denied breaking into the filling station, Harris replied, "No," and admitted he did break in and get the machine himself. On redirect, Harris stated he was with another individual whose nickname is "No Face," and he then stated he did not break into the filling station, but that "No Face" did, and he was driving the car. He then testified his uncle had absolutely nothing to do with taking the cigarette machine.

The prosecuting attorney then inquired of the witness Harris as to whether he realized he was not required to incriminate himself before the jury, to which the defendant responded, "No, I didn't know about it."

The court then called a recess and the witness Harris was given an opportunity to consult with an attorney concerning his own rights. He stated he did not wish to change any of his previous testimony. He then stated that he did, in fact, loan his automobile to his uncle on the night in question, but when asked as to whether or not there was a cigarette machine in the trunk of the car when it was returned, the witness took the Fifth Amendment. Harris did state at that point that he had told Officer Smith he would testify against the defendant.

Officer Eddie Glen Hoklotubbe testified he was working as a patrol officer on the night in question, and that at approximately 11:30 p. m. he responded to a burglary call at the scene of the crime. The officer testified the service station owner was notified and he advised his business had been burglarized and a cigarette vending machine had been stolen. He testified he then talked with Jesse Harris's half-brother and Jesse Harris's wife at the Harris home at approximately 11:30 p. m., and in the course of the conversation with Mrs. Harris the officers were able to observe a vending machine in the Harris living room, and after a certain amount of conversation, Mrs. Harris allowed the officers in to examine the vending machine.

Officer Hoklotubbe testified Mrs. Harris was placed under arrest for concealing stolen property and the machine was transported to the Oklahoma City Police Department. Acting upon the information gained from Mr. Harris's half-brother and wife, the officers visited three locations, and at the third location found Harris. He also testified Harris's car was located in the 1000 Block of Northeast 14th Street, and at that time Jesse Harris walked up to the patrol car and was placed under arrest. The officer stated after Harris was advised of his rights, he took the officers to the scene of the crime and showed them the burglarized station. He testified after interrogating Harris a radio pickup order for three individuals, including the Appellant, was issued.

Detective Kenneth E. Smith testified he recalled having a conversation with the Appellant in the latter part of February or the early part of March, 1970. He stated the conversation took place at the Oklahoma City Jail, where Appellant was in custody, at approximately 8:00 a. m., and after being advised of his rights, they discussed the burglary. Appellant admitted that he, along with two other people whose names he did not wish to reveal, had gone to the Texaco station and obtained the vending machine, and further, that he had borrowed his nephew's automobile. The officer stated Appellant said his nephew came out, they carried the machine inside the Harris house and Harris advised him he had better call an attorney and get it

straightened out without getting into any trouble, and thereafter, he and his nephew went back to the location of the burglary, which he pointed out. Then, at some later point in time, he was arrested.

The record reflects the defendant rested without calling any witnesses. The record then reflects that the witness Harris requested permission to take the stand again, and was allowed to do so on the motion of the court, and over the objection of the defendant. Once on the stand, the witness Harris stated that he did not wish to re-testify, and was excused.

After the jury returned a verdict of guilt with regard to the first stage of the proceeding, the Appellant asked and received permission to approach the bench, and at that time, made a motion to arrest judgment on the grounds that he was not properly defended. The court inquired of the Appellant as to his reasons for stating he felt the lawyer had not put in enough time on the case, and after the motion made by the Appellant was overruled, the Appellant stated he did not wish to go any further with his lawyer. The Appellant then indicated he intended to hire his own lawyer but the court stated at that point that the defendant would have to continue on through the second stage of the trial, inasmuch as the jury had already determined guilt. At that point, the Appellant offered to stipulate as to his prior conviction. Appellant then made a motion for a new trial on the grounds that he was not properly represented, and the court overruled it.

In addition to the stipulation of the Appellant, the State offered into evidence documentary proof concerning the defendant's prior conviction for Robbery with Firearms. The court then proceeded to complete the second stage of the proceeding, at the conclusion of which the jury returned a verdict form indicating the defendant was guilty as charged in the information, after former conviction of a felony, and fixed his punishment at fifteen (15) years.

Appellant contends in his brief that error was committed in three ways during the trial of his case: (1) First, that accusatory hearsay was improperly admitted; (2) Second, corroboration of the confession was not sufficient; and, (3) Third, the court failed to instruct on the limited effect of impeaching testimony.

I.

██ The testimony complained of under the first proposition is that of Officer Hoklotubbe concerning his conversations with the witness Harris. While the five cases cited by the Public Defender representing the Appellant do, in fact, stand for the proposition that the admission of accusatory hearsay is reversible error, the Public Defender was candid enough to concede in his brief that the testimony by Officer Hoklotubbe was not directly accusatory under ordinary circumstances. We have closely examined the complained of testimony and the transcript and agree with the contention of the Attorney General that said testimony does not fall within the guidelines of the definition of hearsay as set out by Judge Nix of this Court in Sevier v. State, Okl.Cr., 355 P.2d 1018 (1960), wherein we held:

"Hearsay, as defined by previous authorities and as related in 20 Am.Jur. 408, § 454, is evidence which derives its value, not solely from the credit to be given to the witness upon the stand, but in part from veracity and competency of some other person.

"The exclusion of hearsay testimony is based upon solid ground and adds strength to our system of jurisprudence.

"Hearsay testimony is not subjected to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. Hearsay testimony is one made without sanction of oath and without defendant being under a responsibility to answer for the crime of perjury in making a wilful falsification and is free from cross-examination."

In addition to our holding that the testimony complained of in this instance does not squarely fall within this definition, we should like to point out that both parties to the hearsay, that is to say Officer Hoklotubbe and the speaker, the witness Harris, were both presented as witnesses by the State and both were subject to cross-examination; therefore, even if such testimony were held to be accusatory hearsay, it is difficult to see how the Appellant could be prejudiced by the admission thereof, inasmuch as he had the opportunity to fully, and did in fact fully, cross-examine both witnesses.

## II.

■ We likewise find the second proposition, that the corroboration of the confession was insufficient, to be likewise without merit. Appellant advances the rule of Clark v. State, 65 Okl.Cr. 56, 82 P.2d 844 (1938) for the proposition:

> "A judgment of conviction cannot be had upon testimony introduced for the state, when that testimony comes wholly from two witnesses of *equal* credibility, one testifying to the guilt, and the other testifying to the innocence, of the accused." (Emphasis Added)

Surely, it cannot be seriously contended under the evidence in this case that Officer Hoklotubbe and the witness Harris are of equal credibility. Further, we should like to point out that the believability and the weight of the witness Harris's testimony are clearly within the province of the jury, and it is a well settled rule in this jurisdiction that it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl. Cr., 468 P.2d 805 (1970).

In addition, there is a line of authority, relied upon by the Attorney General in his brief, that where the actual commission by someone of the offense charged is established by independent evidence a conviction based upon the defendant's voluntary confession is warranted, and that corroborative evidence necessary to support an accomplice's testimony can be sufficiently supplied by the officer who received the defendant's confession, after having thoroughly advised him of his rights. Gile v. State, Okl.Cr., 473 P.2d 275 (1970).

## III.

Finally, Appellant contends the court erred in failing to instruct on the limited effect of impeaching testimony, referring to the contradictory statements made by the witness Harris as constituting what could be classed as "self-impeachment." Further, counsel for the Appellant complains of the prosecution's comment with regard to that testimony, insofar as an indication by the prosecutor in front of the jury that the witness had changed his mind again.

■ While this Court does not condone side comments by prosecutors in the trial of a law suit, Harris's contradictory testimony and the prosecutor's comment on the same hardly reach the dignity of impeaching testimony as contemplated within the rule of the case cited by Appellant. Appellant contends that when such impeaching evidence is admitted, under proper conditions, the court should clearly inform the jury such contradictory statements can only be considered by them for the purpose of affecting the credibility of the witness, and such contradictory statements are in no sense to be considered as original evidence, citing Flauhaut v. State, 66 Okl.Cr. 417, 92 P.2d 587 (1939). In the *Flauhaut* case the impeaching testimony complained of was that evidence offered by two additional rebuttal witnesses for the State. We do not have true "impeachment testimony" in the case at bar.

In addition to our consideration of the briefs and authorities submitted herein, we have carefully examined the record and the evidence in this case and find no fundamental or prejudicial error which would require reversal or modification.

In view of the foregoing, it is the opinion of this Court that the judgment and sentence herein should be, and the same is hereby, affirmed.

BUSSEY and BRETT, JJ., concur.