THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD YARBROUGH, Defendant-Appellant.

Fifth District   No. 74-380

Opinion filed April 30, 1976.

JONES, J., dissenting.

Michael B. Constance, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The defendant-appellant appeals from a judgment of the trial court of St. Clair County finding him guilty of the crime of armed robbery, after a trial before a jury resulted in a guilty verdict.

Appellant contends in this court that the State failed to prove his guilt beyond a reasonable doubt. The evidence on which the conviction is based came solely from two prosecution witnesses, Eugene Compton and Robert Yates, who gave conflicting testimony.

On February 5, 1972, Eugene Compton operated a barber school at 13th Street and Lynch Avenue in East St. Louis, known as Metro Barber College. The first floor contained barber chairs, wash basins and other things necessary for practical education. The second floor contained a classroom which was used for theoretical education and as a place to eat lunch.

February 5, 1972, was a Saturday, but the school was open all day. About 4:30 to 5 p.m., Compton and about nine students, including one Robert Yates, were in the classroom. A student excused himself, and a short time later an unknown person walked up the stairs and through the door to the classroom. The individual displayed a revolver and made everyone lie face down on the floor. There were two other individuals with the first assailant. Compton's wallet containing about $80 and a briefcase containing checks and a revolver were taken.

Compton testified as follows. On Saturday afternoon, February 5, 1972, he and nine students were in the classroom on the second floor of the building housing the Metro Barber College at 13th Street and Lynch Avenue in East St. Louis. There are two hanging light fixtures in the stairwell to the second floor and five long fluorescent fixtures affixed to the ceiling of the classroom which were functioning that day, producing lighting conditions similar to those in the courtroom in which he was testifying. When the first robber came to the top of the stairs, he (Compton) was seated in a chair approximately ten feet from the robber. When he realized this man was not a student, he walked to within three or four feet of him and asked him what he was doing in the school. The intruder displayed a chrome-plated revolver with a brown handle and told him to lie on the floor. Compton obeyed and did not get another look at the robber that day. He said he had about 30 seconds to view the person with the revolver, and was positive it was the defendant. The assailant wore a car coat which was longer than a jacket, sunglasses, and a

wide-brimmed hat that did not drop over or cloud his face. The intruder was five feet ten inches tall, thin-faced and of normal build, and that was substantially what he told the police when they arrived shortly after the robbery; however, the defendant was thinner at the time of the robbery than at the time of the trial.

On cross-examination Compton admitted that he may have had only 25 seconds to view the robber with the revolver. When the robbers entered, he was seated in such a way as to be partially facing the windows in the classroom which fronts on Lynch Street. The intruder's eyeglasses were tinted similarly to the defense attorney's, such that a person could see through them, but he had not noticed the man's eyes because he was looking at the gun. He noticed nothing unusual about the man's nose and he had thin facial hair on the sideburns which was different by the time of the preliminary hearing. He agreed that a hat with a wide brim creates a discernible shadow in fluorescent lighting. Referring to a police report, defense counsel asked Compton if he had described the man with the gun as a male Negro, dark color skin, age unknown, height unknown, with gray pants and a black leather jacket. Compton replied that he described the man with the gun as he had to the prosecutor on direct examination. Defense counsel also asked whether Compton had described a second robber to the police as Negro, color unknown, wearing a large red hat with a white band. In reply Compton said that the red hat was worn by the person with the pistol.

Yates testified for the State as follows. He was a student at Metro Barber College on February 5, 1972, and was present in the classroom at the time of the robbery. Compton was seated near the door with his back to the door when the robbers entered. A student asked the men what they were doing there and the man with the nickel-plated gun said, "You know what it is; everybody hit the floor." Compton was still seated at that time. Yates·was standing directly in front of the stairs and was about to walk down the stairs when the men entered. The man with the pistol was five feet eight and one-half or nine inches tall and wore dark "shades" and a red hat. He did not look like the defendant. The man with the pistol and the defendant were not the same size and the intruder had a small goatee. The robber was thinner than the defendant.

On cross-examination Yates testified that the dark glasses worn by the robber were shaped like stop signs and were not tinted like those of the defense counsel; but were just dark. The robber's nose was pretty flat as though he could have been a fighter. Compton did not get out of the chair, but was pushed from the chair to the floor by the man with the sawed-off shotgun.

The evidence is conflicting. Compton claims to have walked to within three or four feet of the intruder and to have had 25 to 30 seconds to look

at him. Yates claims Compton was seated with his back to the stairs and never had a chance to stand up before he was pushed to the floor by one of the other robbers. Yates estimated there was only a four- or five-second period from the time the robber reached the top of the stairs and the point at which everyone in the room was forced to lie face down on the floor.

As to physical characteristics which would help either witness identify the robber, Compton stated he was a Negro male, five feet, ten inches tall with thin facial hair on the sideburns, a thin face and normal build. Yates stated this individual was a thin Negro male, five feet, eight and one-half or nine inches tall, with a flat nose, and a small goatee.

Both of the identification witnesses who testified on behalf of the State were equally credible. Under these circumstances, the language from *Clark v. State* (1938), 65 Okla. Crim. 56, 64, 82 P.2d 844, 848, is relevant:

> "In the case of Jackson v. Stat, 12 Okl. Cr. 446, 158 P. 292, this court held: 'A judgment of conviction cannot be had upon testimony introduced for the state, when that testimony comes wholly from two witnesses of equal credibility, one testifying to the guilt, an the other testifying to the innocence, of the accused.' In the opinion it is said: 'It is the duty of the state to establish beyond a reasonable doubt that the person on trial is guilty and that, too, by proper and credible testimony. The state cannot put on two witnesses and prove by one of them that there is a probability of defendant's guilt, and another that he is innocent absolutely, and expect this court to uphold the judgment. One charged with crime is entitled to a fair and impartial trial, and to be convicted according to the forms of law; and it is the duty of the trial court to see that this is done.' "

In our opinion, the evidence before the trial court was insufficient to warrant a conviction.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed.

Judgment reversed.

CARTER, J., concurs.

Mr. JUSTICE JONES, dissenting:

It is the opinion of the majority in this case that certain conflicts in the trial testimony make the evidence insufficient to warrant a conviction. It is my opinion that these conflicts are either nonexistent or not significant enough to warrant reversal. It is also my opinion that the majority has ignored well-established law in Illinois in reaching its conclusion. I therefore respectfully dissent.

First of all, the majority opinion states that the first witness for the State at trial, Compton, testified that during the robbery a man identified by Compton as defendant wore a "car coat," sunglasses, and a wide-brimmed hat, and carried a chrome-plated revolver. The majority opinion then refers to defense counsel's cross-examination of Compton regarding a police report made from Compton's statement shortly after the robbery. Apparently the majority feels that this cross-examination demonstrated an inconsistency in Compton's description of the robber identified as defendant. According to the police report, one of the robbers had been described as a male Negro with a gun, who had dark colored skin and had on gray pants and a black leather jacket. The report listed the robber's age and height as unknown. Also according to the report, another one of the robbers had been described as a "Negro, color unknown," who wore a large red hat with a white band. When questioned at trial about this report, Compton explained that he had not written this report, and that the report was inaccurate. He further explained that the robber referred to in the police report as the one who wore a red hat with a white band was the same robber who carried the pistol, that is, defendant. In light of the later testimony of the other witness for the State, Yates, that one robber carried a pistol and another carried a shotgun, Compton's trial testimony cannot be said to conflict with the description in the police report.

The majority also points out that Yates testified that the robber who carried the pistol was five feet eight and one-half or nine inches tall, wore sunglasses and a red hat, had a goatee and a flat nose, and did not look like the defendant. Compton had similarly described the sunglasses and the hat; however, Compton described the robber as five feet, ten inches tall, with thin sideburns. Additionally, Compton positively identified the robber as defendant on at least three separate occasions during the trial.

The difference in the descriptions of the robber given by the two witnesses and the ability of one but not the other to positively identify defendant as the robber is readily explainable from their testimony. First, Compton, according to his own testimony, had been able to view the robber who wore the red hat, for thirty seconds, "give or take five seconds." Yates, on the other hand, had been able to view the same robber for only "maybe four or five or six seconds." Secondly, as Compton explained, defendant had been "thinner; thinner faced" at the time of the robbery. At the time of the trial, some two years and seven months later, defendant was "heavier." Yates agreed that the robber had been thinner than was defendant at trial.

Yates' statement about the robber not looking like defendant is best viewed in the context in which it was made at trial:

"Q. Is Mr. Yarbrough about the size of this person [the robber with the red hat]?

A. At this point in time it is pretty difficult to me to tell—he doesn't even—look like the same guy."

In light of the fact that Yates had only a brief glimpse of the defendant and the fact that a good deal of time had passed since the robbery, it is not difficult to understant Yates' inability to positively identify defendant as the robber, especially if, as Compton claimed, defendant had been thinner at the time of the robbery.

One further comment need be made with respect to the majority's summary of the trial testimony. The majority accurately points out that Compton "agreed that a hat with a wide brim creates a discernible shadow in fluorescent lighting." The majority fails to point out, however, that Compton went on to state that at the time of the robbery the shadow cast by the hat was not such that it affected his ability to see the robber's face.

The majority reaches the unsupported conclusion that both of the witnesses for the State "were equally credible." The majority then goes on to quote from *Clark v. State* (1938), 65 Okla. Crim. 56, 82 P.2d 844, a 1938 Oklahoma case, and the only authority cited by the majority, in which the Oklahoma court reiterated a statement it had previously made in a 1916 case.

Not only is *Clark v. State* not the law in Illinois, but also the facts of that case make it clearly inapposite to the instant case. In *Clark v. State* the defendant was charged with an unlawful sale of liquor. The State produced two witnesses to identify the defendant as the seller. The testimony of the second witness, Baker, tended to connect the defendant with the sale. However, the testimony of the first witness, Essary, who had been the purchaser of the liquor, was that the defendant "was not the man that sold and delivered the whiskey to him." (65 Okla. Crim. 56, 63-64, 82 P.2d 844, 848.) Furthermore, two other witnesses corroborated this testimony of Essary; and the defendant, testifying in his own behalf, denied any participation in the sale. In contrast, Compton and Yates were the *only* witnesses who testified at the trial in the instant case. Compton positively identified defendant as the robber. Yates, unlike Essary, did not state that defendant was not one of the robbers. Yates merely responded that "[a]t this point in time" it was difficult for him to say whether defendant was the same size as one of the robbers, since "he doesn't even—look like the same guy." Contrary to the belief of the majority, it cannot be accurately stated that in the instant case one of the witnesses was "testifying to the guilt, and the other testifying to the innocence, of the accused." (65 Okla. Crim. 56, 64, 82 P.2d 844, 848.) Rather, in the instant case one witness testified to the guilt of the accused; the other witness was simply unsure.

As to the majority's conclusion that both witnesses were equally

credible, I need only point out that the jury in the instant case must have believed Compton's positive identification of defendant as one of the robbers and must have discounted Yates' inability to make the same identification. In light of the difference in the lengths of time which the two witnesses were able to view the robber's face, the jury's assessment of the testimony was completely justified.

In Illinois the law has long been that the positive identification by one witness who had ample opportunity for observation is sufficient to support a conviction. (*People v. Auriene*, 361 Ill. 440, 198 N.E. 206; *People v. Guyton*, 53 Ill. 2d 114, 290 N.E.2d 209; *People v. Bricker*, 23 Ill. App. 3d 394, 319 N.E.2d 255; *People v. Johnson*, 24 Ill. App. 3d 152, 320 N.E.2d 69.) The jury, who not only hears the testimony, but also sees the defendant, is in a superior position to evaluate discrepancies in the description of the defendant, relative to his height, weight, complexion, and wearing apparel; and the reviewing court should not say that the jury was required to regard such discrepancies as sufficient to create a reasonable doubt. (*People v. Nicholson*, 55 Ill. App. 2d 361, 204 N.E.2d 482; *People v. Jackson*, 8 Ill. App. 3d 312, 290 N.E.2d 687 (abstract opinion).) Furthermore, inconsequential omissions and inconsistencies in a description given to the police are merely elements for the jury to consider in determining the weight to be given testimony dealing with identification. (*People v. Guyton; People v. Bricker*.) And at trial, any conflict in the identification testimony, even a direct and irreconcilable conflict, is for the jury to consider. (*People v. Goodpaster*, 35 Ill. 2d 478, 221 N.E.2d 251, *cert. denied*, 386 U.S. 967, 18 L. Ed. 2d 120, 87 S. Ct. 1051; *People v. Oestringer*, 24 Ill. App. 3d 185, 321 N.E.2d 146; *People v. Murray*, 34 Ill. App. 3d 521, 340 N.E.2d 186.) For it is the peculiar prerogative of the jury to determine the credibility of each witness and the weight to be given to the testimony of that witness. *People v. Goodpaster; People v. Oestringer; People v. Murray*.

A reviewing court should not set aside a jury's determination of guilt unless the testimony was so unsatisfactory or improbable as to leave a reasonable doubt as to the defendant's guilt. (*People v. Williams*, 52 Ill. 2d 455, 288 N.E.2d 406; *People v. Zuniga*, 53 Ill. 2d 550, 293 N.E.2d 595.) In this case the evidence of defendant's guilt was neither unsatisfactory nor improbable. The jury's verdict was totally justified.

In light of the facts of the instant case and the well-established law in this State, it is easy to see why the majority failed to cite a single Illinois case. In my opinion the result the majority has reached is clearly in error.