FREDERICK, Appellant, v. HOTEL INVESTMENTS, INC.,
Respondent.

*No. 163.   Argued October 6, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 562.)

430

For the appellant there was a brief by *Bollenbeck, Patterson, Froelich, Jensen & Wylie,* attorneys, and *John G. Wylie* of counsel, all of Appleton, and oral argument by *John G. Wylie.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Robert C. Watson* of counsel, all of Milwaukee, and oral argument by *Mr. Watson.*

CONNOR T. HANSEN, J. The plaintiff was injured when she fell on steps in the Schroeder Hotel in Milwau-

kee. At the time of her injury, plaintiff was a sixty-two year old widow, and a licensed practical nurse employed at a hospital in Neenah, Wisconsin. Plaintiff alleges that her injury was caused by falling when she stepped on a piece of marble while descending the steps. After the accident, a piece of marble was found in the vicinity of the steps, which piece of marble was of the same type installed throughout the lobby area of the hotel to a height of about six or eight feet.

The plaintiff's left knee was injured as a result of the fall and subsequently a patellaectomy was performed on the knee. During this hospitalization, plaintiff developed a urinary tract infection and a viral respiratory infection. After her discharge from the hospital, she experienced continuing difficulties and was hospitalized on six occasions, which included treatment for thrombophlebitis on both legs. The accident occurred on October 29, 1966, and because of her continuing pain and disability, plaintiff, on January 1, 1968, retired from her employment as a practical nurse at the hospital.

We consider the plaintiff raises three issues on this appeal:

(1) Did the trial court err in refusing to submit the issue of negligent construction to the jury?

(2) Is the respondent more negligent than the plaintiff as a matter of law?

(3) Was the verdict perverse?

*Refusal to instruct on negligent construction.*

The trial court was of the opinion that, under the facts of this case, the piece of marble on the step did not present an issue of improper materials used in construction, or of a structural defect in the building, and therefore confined its instructions to the issue of the defendant's negligence as to maintenance.

It is undisputed that the premises on which the injury occurred was a public building and, therefore, the de-

fendant, as owner, was subject to the standards of care set forth in sec. 101.06, Stats.

A public building does not meet that standard of care if it is constructed of materials which render the structure unsafe. *Holcomb v. Szymczyk* (1925), 186 Wis. 99, 104, 202 N. W. 188. *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 629, 60 N. W. 2d 349. It is not disputed that the piece of marble on which appellant allegedly fell was similar to the marble in the lobby area which surrounds the stairway. Appellant contends that, since the piece of marble must have come from one of the marble facades in the lobby area, it is reasonable to infer a defect in the materials and, therefore, in the structure.

The trial court correctly determined that finding the piece of marble on the steps did not give rise to an inference that improper or defective materials were used in construction. There was no evidence presented at the trial that the materials composing the structure were improper or defective, or from which it can be inferred that marble is an unsafe material for use in the construction of facades in public buildings.

Also, we are unable to accept plaintiff's suggestion that this court take judicial notice of the fact that marble is unsafe for such use, and therefore the building was not safely constructed.

Judicial notice may be taken of matters of common knowledge. *Heckendorf v. J. C. Penney Co.* (1966), 31 Wis. 2d 346, 142 N. W. 2d 801. Appellant admits that use of marble facades in public buildings is a common practice. In *Raim v. Ventura* (1962), 16 Wis. 2d 67, 72, 73, 113 N. W. 2d 827, this court stated that custom and usage may be persuasive as to what is reasonably safe:

"A usage which is patently unsafe (as in the *Johannsen Case*) or a custom which is contrary to law cannot be given credence by the court. *Molaske v. Ohio Coal Co.* (1893), 86 Wis. 220, 56 N. W. 475; *Minaghan v. State* (1890), 77 Wis. 643, 46 N. W. 894.

"However, where there is an avalanche of acceptability of a custom or usage, and where such general practice contravenes no established law, public policy, or common sense, it may be persuasive as to what is a rule of reason in a safeplace case. . . ."

There was no evidence at the trial that the marble in question was defective.

The issue of negligent construction was properly excluded from the jury; therefore, it is not necessary to consider whether the failure to submit the issue was prejudicial.

### *Negligence of the parties.*

Appellant contends that the verdict is contrary to law in that the respondent was, as a matter of law, more negligent than the appellant, and refers to *Erdmann v. Frazin* (1968), 39 Wis. 2d 1, 158 N. W. 2d 281, and *Cossette v. Lepp* (1968), 38 Wis. 2d 392, 157 N. W. 2d 629. In these cases this court held that where a violation of the safe-place statute is found, there is a presumption that the injury is caused by the violation. Appellant argues that because the jury found the respondent negligent under the safe-place statute, the injury is presumed to be caused by that negligence and the respondent is therefore more causally negligent than appellant, as a matter of law.

Under the authority of *Erdmann* and *Cossette,* once it is established that the owner of a public building is negligent in violation of the safe-place statute, the plaintiff need not prove causation, and the burden of proof is on the owner to rebut the presumption of causation. That presumption, however, does not determine the apportionment of causal negligence. As applied in this case, the presumption alleviated the necessity of the plaintiff proving that the negligence attributed to the defendant was a

substantial factor in causing her injuries. It does not, however, establish as a matter of law that the negligence of the defendant was greater than that of the plaintiff. The apportionment of the causal negligence attributed to each of the parties was a determination properly within the province of the jury.

Moreover, in *Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 346, 173 N. W. 2d 196, this court held that, in comparison of negligence, negligence founded upon the safe-place statute does not necessarily contribute more than common-law contributory negligence.

### *Was the verdict perverse?*

### Negligence.

The issue of whether the defendant was more negligent than the plaintiff as a matter of law has been heretofore considered.

It is further asserted that the apportionment of negligence is perverse in that the defendant is more negligent than the plaintiff by reason of a higher duty imposed on it under the safe-place statute. As the owner of a public building, the defendant is required to exercise that degree of care which will render its building as safe as the nature of the place will reasonably permit. *Strack v. Great Atlantic & Pacific Tea Co.* (1967), 35 Wis. 2d 51, 150 N. W. 2d 361. Also, the plaintiff was under a duty to exercise ordinary care for her own safety. In this case the trial court instructed the jury as to the different standards of care required of the parties. In *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 119 N. W. 2d 405, this court held that ordinary negligence could be compared with negligence founded upon the safe-place statute; and in *Lovesee v. Allied Development Corp., supra,* it held that when so compared, defendant's negli-

gence in violation of the safe-place statute does not necessarily contribute more to an injury than the common-law contributory negligence of the plaintiff.

The appellant further contends that the verdict is perverse in that the evidence shows that her negligence was less than that of the respondent. In answer to a special verdict question, the jury found that appellant slipped and fell on the piece of marble in question. It is undisputed that the piece of marble was the same type of marble in the facades throughout the lobby area.

The trial court declined to submit the issue of negligent construction to the jury because there was no evidence of negligence in that respect. Nor was there any evidence that the marble facades were in a state of disrepair. On the issue of the respondent's negligence in maintenance of the steps, there was no testimony as to exactly where the piece of marble came from or how long it had been on the steps. Respondent's manager testified that respondent employs a full-time lobby porter who is responsible for general maintenance in the lobby and lobby area. He further testified that while the steps are cleaned at night, the porter's duties include incidental sweeping and that in the course of his duties the porter would pass the steps in question every forty-five minutes.

There were two issues on the plaintiff's contributory negligence: Lookout, and failure to use the handrail. On the issue of lookout, the plaintiff testified that she looked at the steps but did not see the piece of marble. She testified that the marble was three to three and one-half inches long, and one-half inch wide. The hotel manager testified that it was one inch long and one-quarter to one-half inches wide. The marble was brown or reddish-brown, speckled with white, while the steps were black.

On the issue of failure to use the handrail, there was evidence that plaintiff did not use the handrail although one was available. She contends, however, that negligence cannot be attributed to her in failing to use the handrail

since the stairway was seven feet wide and there was no handrail in the middle of the stairway. However, this issue was not raised in the trial court. There is no evidence that appellant was descending the steps in the middle; that there was not a handrail in the middle; nor that respondent was negligent in failing to provide a handrail there.

The duty to keep premises safe under the safe-place statute does not make the owner an insurer and does not guarantee safety. *Paaske v. Perfex Corp.* (1964), 24 Wis. 2d 485, 129 N. W. 2d 198. A jury's findings as to the apportionment of negligence will be sustained if there is any credible evidence which under any reasonable view supports the finding; and this is especially so where the trial court has approved the findings. *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 128 N. W. 2d 400; *Berg v. De Greef* (1967), 37 Wis. 2d 226, 155 N. W. 2d 7.

The trial court properly found the jury's apportionment of negligence supported by credible evidence.

## Damages.

The fact that damages may be inadequate does not necessarily show prejudice or render a verdict perverse, where no liability exists, unless the negligence issues were decided on the minimum of credible evidence which was against the great weight of the evidence. *Miller v. Illinois Central R. R.* (1967), 36 Wis. 2d 184, 191, 192, 152 N. W. 2d 898.

In this case the jury's determination of contributory negligence is supported by more than a minimum of credible evidence.

Furthermore, we are not convinced the jury's award of damages was grossly inadequate. There is no doubt that the plaintiff experienced considerable difficulties with her legs after the accident and in January of 1968,

found it necessary to retire from her employment at the hospital as a practical nurse. At the time of her retirement, she was sixty-three years of age. The hospital had a voluntary retirement plan at age sixty-five and mandatory retirement at age sixty-eight. There is conflicting testimony as to whether the hospital had agreed to employ her until she became sixty-eight.

On appeal, appellant acknowledged that the $17,000 award of the jury for compensation for pain and suffering was within the range of reasonableness.

The most significant challenge is to the amount awarded for loss of earnings and medical expenses. However, an orthopedic specialist, who was one of the plaintiff's attending physicians, testified that at his initial consultation with the plaintiff she acknowledged occasional discomfort in her left knee prior to the fall; that at the time of the surgery he found chondromalacia, a degeneration of the cartilage, in the kneecap and femur; and the formation of arthritic spurs on the kneecap. He further testified that the plaintiff also had arteriosclerosis and coronary insufficiency, and that he had no opinion regarding the relationship between the surgery and the left leg thrombophlebitis in June and November, 1968, and February, 1969, or the right leg thrombophlebitis in July, 1968.

The trial court reviewed the determination of damages after verdict, and in our opinion correctly determined that the amount of the award, while on the low side, was not unreasonably low and not the result of perversity, prejudice or passion, nor contrary to the evidence, and was supported by credible evidence and not against the great weight of the evidence.

In *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 693, 154 N. W. 2d 308, in discussing alleged perversity of a verdict with respect to damages, this court stated:

"If there is any credible evidence which under any reasonable view supports the jury finding as to damages, especially when the verdict has the approval of the trial

court, this court will not disturb the finding. Even when it still appears that the award is low, this court will not interfere with the jury's finding, unless the award is so unreasonably low as to shock the judicial conscience. We do not consider the damages awarded here fall in such category, and, therefore, hold there was no perversity."

The judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.