STATE, Respondent, v. HEIDELBACH, Appellant.

*No. State 76. Argued December 2, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 497.)

354

For the appellant there was a brief by *Henry Piano,* and oral argument by *Harold B. Jackson, Jr.,* both of Milwaukee.

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

WILKIE, J. In addition to the usual contention on review that defendant-appellant's guilt beyond a reasonable doubt was not established by the evidence, one

primary legal question is raised: Whether evidence of defendant's expenditures shortly after the date of the burglary was properly admitted.

Although courts agree that evidence of a defendant's financial condition after the time when the alleged perpetration of the crime took place is relevant, they disagree on the necessity of foundation evidence.

"It has been held that generally evidence of the wealth or poverty of the defendant is not admissible in a prosecution for larceny; however, evidence tending to show that the defendant had no money before a larceny but had a considerable amount afterward is admissible, since evidence of a sudden and unexplained possession of means about the time the larceny was committed has the tendency to connect the defendant with the crime where there are other circumstances to support it. This is generally true although the source of the money is not definitely traced or identified by the prosecution, but some courts take the view that such evidence is not admissible without evidence tending to identify the money in defendant's possession with that stolen. Generally, however, the foundation for the introduction of such evidence includes proof only of (1) the 'impecuniosity' of the defendant just before the theft, and (2) the 'sudden accession' of wealth (3) contemporaneous with the theft. Some courts hold that where the source of the money is not traced, evidence of money found in the possession of an accused is inadmissible unless there has first been evidence tending to establish the impecunious condition of the accused prior to the perpetration of the crime with which he is charged. However, other courts have taken the view that such evidence is admissible without a showing of defendant's prior impecunious condition, the weight of the evidence in such case being for the trier of fact." [1]

What appears to be the majority of courts require either a tracing of the source of the funds or, in the absence thereof, a showing of the defendant's prior

[1] 50 Am. Jur. 2d, *Larceny*, p. 331, sec. 150. *See also:* Annot. (1963), 91 A. L. R. 2d 1042.

impecunious condition.[2] It is often difficult to determine a particular court's position on the matter (1) because of the use of such phrases as "sudden acquisition," implying prior impecuniosity, often despite the complete lack of such evidence; (2) there is usually present some evidence of the defendant's financial condition prior to the offense; (3) the particular issue is often the sufficiency of the evidence to sustain a conviction. In addition, the necessary foundation is often, in practice, very slight.[3]

Some courts, however, explicitly require no foundation, admitting evidence of a defendant's possession of a large amount of money or the making of large expenditures and leaving the weight to be accorded such evidence to the trier of fact.[4] Although the California Court of Appeals had originally required foundation evidence,[5] that court later reversed its position, stating:

". . . The correct rule is that such evidence is relevant and admissible, but that the weight thereof is for the trier of fact." [6]

While this court has held [7] that evidence of a defendant's financial condition contemporaneous with the offense

[2] *E.g., Gill v. United States* (5th Cir. 1961), 285 Fed. 2d 711; *State v. Ball* (Mo. 1960), 339 S. W. 2d 783, 91 A. L. R. 2d 1042.

[3] *E.g., People v. Connolly* (1930), 253 N. Y. 330, 171 N. E. 393 (expenditures in excess of usual income).

[4] *State v. Cofer* (1952), 73 Idaho 181, 249 Pac. 2d 197; *People v. Coleman* (1968), 14 Mich. App. 515, 165 N. W. 2d 615; *State v. Parr* (1964), 64 Wash. 2d 921, 395 Pac. 2d 196. Illinois and Iowa appear to have taken the same position: *People v. Nicholson* (1965), 55 Ill. App. 2d 361, 204 N. E. 2d 482; *State v. Hobbs* (1961), 252 Iowa 439, 107 N. W. 2d 242.

[5] *People v. Orloff* (1944), 65 Cal. App. 2d 614, 151 Pac. 2d 288.

[6] *People v. Gardner* (1954), 128 Cal. App. 2d 1, 6, 274 Pac. 2d 908. *See also: People v. Falls* (1957), 150 Cal. App. 2d 554, 310 Pac. 2d 484.

[7] *Perrin v. State* (1892), 81 Wis. 135, 50 N. W. 516.

is admissible, it has never spoken to the point here in issue.

However, this court's position on the liberal admission of circumstantial evidence is clear:

"The general rule as to the admissibility of circumstantial evidence in criminal cases is stated as follows in 20 Am. Jur., Evidence, p. 261, sec. 273:

" 'The modern doctrine is extremely liberal in the admission of any circumstances which may throw light upon the matter being investigated, great latitude must be given the state in the production of its evidence in proof of criminal charges. . . . in no case is evidence to be excluded of facts or circumstances connected with the principal transaction from which an inference can be reasonably drawn as to the truth of a disputed fact. All facts tending to elucidate the matter under discussion which are referable to the point in issue tend to exhibit the res gestae or to establish a chain of circumstantial evidence in respect of the act charged. It is necessary only that they tend to prove the issue or constitute a link in the chain of evidence. Evidence of circumstances which tend to connect the accused with the commission of a crime is properly admitted, even though inconclusive in character. Such evidence is competent to establish many varying facts.'

"This court has stated that circumstantial evidence may be and often is stronger and more satisfactory than direct evidence. See *State v. Johnson* (1960), 11 Wis. 2d 130, 135, 104 N. W. 2d 379. The dissenting opinion in the *Johnson Case* also recognized that most cases involving the crime of burglary rest to a very great extent, if not solely, on circumstantial evidence due to the secretive nature of the crime." [8]

As a practical matter, it is difficult to conceive of a case wherein some foundation evidence will not be presented, since without such additional evidence the state would fail to sustain its burden. In the instant case such evidence was presented: that defendant's income

[8] *Kopacka v. State* (1964), 22 Wis. 2d 457, 463, 464, 126 N. W. 2d 78.

for six months prior to the burglary was approximately $6,000, less than his total cash expenditure during the period here involved; that he had borrowed $3,000 from his father-in-law; that he quit his job contemporaneous with the burglary; that the plane he purchased was available for two weeks before his actual cash purchase shortly after the burglary—all these circumstances tend to establish a change in defendant's financial condition and indicate a "sudden acquisition" of funds. These facts, combined with his rather unusual expenditures, are highly relevant to the issue of his guilt.

As Mr. Justice HOLMES stated in *Commonwealth v. Mulrey:* [9]

". . . The evidence by itself of course did not prove criminal conduct. But it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other facts. *Commonwealth v. O'Neil,* 169 Mass. 394. It is possible that Mulrey may have had an independent fortune from which his deposits came, but that was open to him to prove if he saw fit, and was not the probability with regard to one who was working in his place and for his pay. The evidence properly was admitted, . . ." [10]

Defendant argues that to admit evidence of defendant's expenditures occurring after the time of alleged perpetration of the crime, without a showing of his prior financial condition, requires the defendant to explain these expenditures and that this would be a violation of his rights against self-incrimination. This contention has no merit.

In the first place, no defendant's rebuttal evidence is necessarily limited to his own testimony. Other evi-

[9] (1898), 170 Mass. 103, 49 N. E. 91.
[10] *Id.* at page 110, 111. *See also: People v. Nicholson* (1965), 55 Ill. App. 2d 361, 369, 204 N. E. 2d 482.

dence, documentary or testimonial might obviously be presented to establish the source of the funds. In fact, in this case defendant presented testimony of his father-in-law as to the source of $3,000 of the total expended by him during the period here involved.

Second, even if the state were required to lay a foundation, the burden would still be on defendant to present evidence to rebut that of the state; in fact his burden would be even greater. Hence, the question of the necessity of the preliminary foundation has little bearing on defendant's contention.

Third, in any situation where the state presents evidence against a defendant, whether direct or circumstantial, the defendant will be required to rebut it. Although not a necessity, often the only evidence a defendant can present will be his own denials. Clearly such defendants are not denied their right to refuse to testify; it is simply a matter of strategy within the context of the practical exigencies of the particular case.

We conclude therefore that the evidence of expenditures after an alleged crime is admissible without the state first laying a prior foundation of the prior relative impecuniousness of defendant before the event of the alleged crime. The evidence is relevant and admissible; the weight of such evidence is for the trier of fact.

As to the sufficiency of the evidence to support the court's determination of guilt we repeat what we said in *Bethards v. State:* [11]

"This court has often stated that before it will reverse a conviction because of insufficiency of the evidence,

" '. . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably

---

[11] (1970), 45 Wis. 2d 606, 612, 173 N. W. 2d 634.

could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." '

"Much of the state's case against the defendant is based on circumstantial evidence. However, it is well established that a finding of guilt may rest upon evidence which is entirely circumstantial. Indeed, although each element of a crime must be proven beyond a reasonable doubt, each element *may* be proven beyond a reasonable doubt by circumstantial evidence alone.

"After our review of the record in this case, we are entirely satisfied that while the circumstantial evidence presented is not overwhelming, it clearly is sufficient to satisfy the test set forth in *Lock v. State* [(1966), 31 Wis. 2d 110, 142 N. W. 2d 183]."

Considering all the testimony, not merely any single part of it, in a light most favorable to the state and conviction, we are convinced that the evidence was not so insufficient that the courts could not find this defendant guilty beyond a reasonable doubt. The web of evidence, albeit mostly circumstantial, describing the activity of the mysterious car and its occupants, the location of the defendant at employment in the area, the tracing of pieces of the lockbox in the stolen safe, the early September, 1966, spending by defendant, was sufficient to reasonably convince a trier of fact of this defendant's guilt.

Defendant finally urges this court to exercise its discretionary power under sec. 251.09, Stats., and grant him a new trial in the interest of justice.

"[A] new trial will be granted in the interests of justice only where it appears that the defendant ought not to have been convicted and that a new trial conducted under optimum conditions would probably result in an acquittal." [12]

---

[12] *White v. State* (1970), 45 Wis. 2d 672, 681, 173 N. W. 2d 649.

Defendant has offered no reasons why this court should exercise its discretion in this case, and none appears to exist. It is not probable that there has been a miscarriage of justice.[13]

*By the Court.*—Judgment and order affirmed.

[13] *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919; *Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281.