JACOBS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 105. Argued February 3, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 113.)

*See ante, p. 355, involving same defendant convicted of attempted murder, endangering safety, and attempted armed robbery.

For the plaintiff in error there was a brief and oral argument by *Roy W. Wilson* of Milwaukee.

For the defendant in error the cause was argued by *Kenneth J. Bukowski,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. The attempted armed robbery took place at Joe's Superette at 1800 West State Street in the city of Milwaukee. Joseph Berman, the store proprietor, was alone in the store when the defendant and his accomplice entered, at about 8 a. m. on February 26, 1968.

The store owner, the only eyewitness, testified that the defendant entered the store, pointed a gun at him and demanded his money. He testified the defendant was no more than three feet from him when he first saw him with a gun in his hand, and that "I would recognize him as long as I live." The proprietor testified he told the gunman he did not have any money and to go ahead and shoot. At that point defendant's accomplice urged defendant to leave. Children were entering and leaving the store. With his partner leaving, the children coming and going, and the proprietor telling him to go ahead and shoot, the defendant decided to leave, and did leave.

Subsequently, the store proprietor was called to the police station where he confronted the defendant and identified him as the holdup man. At that time the store owner testified the defendant asked him why he wanted to involve only the defendant when he knew someone else was also involved.

At the time of trial a Milwaukee detective, James Manayek, testified that, on the morning of February

29, 1968, the defendant confessed to entering the store with a Kenneth Wallis with the intention of robbing it, but that, after the defendant drew the gun and announced the robbery, his partner became confused, made a statement to defendant, and started to run out of the store. The defendant then followed and fled from the store. Officer Manayek testified he informed defendant of his constitutional rights, that the defendant stated he understood them, and that defendant then chose to discuss the interrupted robbery.

*Hearing on confession.*

The defendant contends that the trial judge, in finding the defendant guilty, relied heavily upon the defendant's confession. That is true.[1] The defendant further contends that the trial court was required to hold a *Goodchild* hearing [2] before admitting the confession into evidence. That is not true.[3] Here there was neither objection to the confession nor any issue as to its voluntariness, so there was neither request nor need for a hearing on admissibility. The only issue raised was whether the defendant made any admissions at all as

---

[1] *"The Court:* Gentlemen, if it were merely a matter of eyewitness identification we might have a hard case here but we don't have a hard case. The identification coupled with the admissions of the defendant convinces the court that this man is guilty as charged."

[2] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753.

[3] ". . . In a trial to the court the trial judge must be satisfied the confessions or admissions of guilt are voluntary before he can consider them in the fact-finding process and when any doubt is raised or an objection to their admissibility is made, the court must formally determine and rule on their admissibility. Absent an objection to the admissibility of a confession, the court without a jury is not required *sua sponte* to rule or hold a hearing on admissibility." *Huebner v. State* (1967), 33 Wis. 2d 505, 518, 147 N. W. 2d 646. *See also: Ray v. State* (1967), 33 Wis. 2d 685, 689, 148 N. W. 2d 31.

to this crime,[4] and that was an issue of credibility of witnesses, to be resolved, as it was, by the trier of fact.[5]

*Corroboration of confession.*

A unique but unsubstantial objection by defendant to the introduction of the confession is that the fact of its having been made was not corroborated. It is a conviction based upon a confession that requires corroboration.[6] Corroboration is not required as to the issue of credibility as to whether the admissions were in fact made. Here the eyewitness testimony of the store proprietor is adequate corroboration of the crime confessed to having been in fact committed by the defendant.

*Proof as to intent.*

The defendant argues that the evidence is insufficient to sustain the finding that the defendant intended to rob the store.[7] While intent is a state of mind, it is not

[4] Although he did admit to confessing a number of crimes, the defendant denied confessing to the instant charge. The denial was not very strong. "*Q.* So, if you don't remember you don't deny that you said these things then, do you?" "*A.* I might have said them, yes, but I don't remember saying them and my memory is not that bad."

[5] *See State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

[6] "All the elements of the crime do not have to be proved independently of an accused's confession; however, there must be some corroboration of the confession in order to support a conviction. Such corroboration is required in order to produce a confidence in the truth of the confession. The corroboration, however, can be far less than is necessary to establish the crime independently of the confession. If there is corroboration of any significant fact, that is sufficient under the Wisconsin test." *Holt v. State* (1962), 17 Wis. 2d 468, 480, 117 N. W. 2d 626. *See also: Barth v. State* (1965), 26 Wis. 2d 466, 132 N. W. 2d 578.

[7] The test on review is ". . . whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove

to be determined apart from the actions of the person involved.[8] The state of mind or intent may reasonably be ascertained from the acts and conduct of a defendant, and the inferences fairly deducible from the circumstances.[9] Here the defendant entered a store, pointed a gun at the proprietor and demanded that he hand over his money. The inference that he intended to hold up the storekeeper is a reasonable one; in fact, the only reasonable one. The alternative inference urged by the defendant that he might have intended only to perpetrate a practical joke is best answered by the comment Molly used to make on the Fibber McGee and Molly radio show in the 30's: "Tain't funny, McGee." More reasonable is the inference here drawn that defendant was intending to rob the store, while armed with a dangerous weapon.

*Proof as to weapon.*

Here defendant contends that ". . . the state failed to prove possession of a firearm, a gun, either on defendant's person or in his hand." If defendant is arguing that the state must produce the actual weapon used [10] in a robbery, that exact contention was nega-

---

defendant's guilt beyond a reasonable doubt. . . ." *Jensen v. State* (1967), 36 Wis. 2d 598, 607, 153 N. W. 2d 566, 154 N. W. 2d 769. The test is the same whether trial is to a jury or to the court. *See State v. Christopher, supra,* at page 127.

[8] *Le Barron v. State* (1966), 32 Wis. 2d 294, 145 N. W. 2d 79.

[9] *Strait v. State* (1969), 41 Wis. 2d 552, 164 N. W. 2d 505.

[10] During the trial the prosecution attempted to introduce into evidence a pistol sold by the defendant two days after the attempted store holdup and allegedly the weapon used by the defendant during the incident. The store owner was unable to identify the pistol sold as the pistol used. Though certain that defendant pointed a pistol at him, the storekeeper testified he thought the gun used had a longer barrel than the one exhibited to him. Defendant admitted owning a pistol and selling it two days after the attempted holdup. The pistol was not allowed

tived by this court, and recently so.[11] Here the gun was firmly placed in his hand at the time of the attempted robbery by his own confession and by the testimony of the eyewitness. It was not necessary that the weapon used be produced and identified at the time of trial. Successful disposition of a weapon used does not create an insurmountable barrier to successful prosecution of the armed robber—nor, for that matter, of a gun-toting killer.

*Proof as to "attempt."*

The defendant locates an issue as to whether the defendant would have committed an armed robbery, to quote the statute, ". . . except for the intervention of another person or some other extraneous factor."[12] The defendant is charged with *attempted* armed robbery. The attempt was complete when the defendant, with intent to commit a robbery, took action, to wit, pointing the gun and demanding the money, in furtherance of such intent.[13] Pointing the gun and telling the store proprietor to "give me that sack" were unequivocal acts, accompanied by intent, sufficient to complete the

---

into evidence, and all testimony as to whether it was the pistol used was stricken from the record.

[11] "We do not agree with defendant's contention that the state must prove that the gun used was in fact a lethal weapon before a person can be convicted of attempted armed robbery. Ordinarily such proof could only be supplied by the recovery of the weapon. . . . In this case, the testimony of the two witnesses who described the gun was sufficient to prove beyond a reasonable doubt that the defendant was guilty of the offense charged." *Boyles v. State* (1970), 46 Wis. 2d 473, 477, 175 N. W. 2d 277.

[12] Sec. 939.32 (2), Stats.

[13] ". . . Within the contemplation of this section an attempt is complete when the defendant, with intent to commit a crime, takes action in furtherance of such intent and the failure to accomplish the crime is due to a factor beyond his control or one unknown to him. . . ." *Huebner v. State, supra,* at page 520; *Boyles v. State, supra,* at page 476.

crime of attempted armed robbery.[14] The unanticipated set of circumstances, including the store owner stating he had no money and to go ahead and shoot, the children coming in and going out of the store during the attempted holdup, the accomplice's suggestion that they leave and his leaving, combined to influence the defendant to abandon the robbery, but only after attempted armed robbery had been unequivocally completed. What happened to make the robbery foray unsuccessful proves only that the best-laid plans of armed robbers, like those of mice and men, "gang aft agley."

*By the Court.*—Judgment and order affirmed.

---

[14] ". . . An unequivocal act accompanied by intent should be sufficient to constitute a criminal attempt. In so far as the actor knows, he has done everything necessary to insure the commission of the crime intended, and he should not escape punishment because of the fortuitous circumstance that by reason of some fact unknown to him it was impossible to effectuate the intended result." *State v. Damms* (1960), 9 Wis. 2d 183, 191, 100 N. W. 2d 592.