Fox, Plaintiff in error, v. STATE, Defendant in error.

*No. State 113. Submitted under sec. (Rule) 251.54 September 11, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 722.)

464

For the plaintiff in error the cause was submitted on the brief of *Louis D. Kaiser* of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Steven B. Wickland,* assistant attorney general.

ROBERT W. HANSEN, J.   The sole issue on this appeal is as to the sufficiency of the evidence to sustain the conviction.   The defendant was convicted of the crime of burglary which has three elements:  (1) An inten-

tional entry; (2) made without consent of the owner; and (3) with an intent to steal.[1] It is not here contended that the evidence does not establish that there was an intentional entry, without consent and with intent to steal. Rather it is contended that the evidence does not establish, beyond a reasonable doubt, that the defendant and his companion, Landerman, were the ones who made the entry and burglarized the drugstore.

The evidence that the defendant and Landerman entered the pharmacy is circumstantial, but a criminal conviction can stand based in whole or in part upon circumstantial evidence.[2] The test of the sufficiency of the evidence to convict is, on appeal, whether the evidence adduced, believed and rationally considered by the trier of fact was sufficient to prove the defendant's guilt beyond a reasonable doubt.[3] Insufficiency of the evidence to warrant conviction requires holding that the evidence, when considered most favorably to the state and the conviction, be so insufficient in probative value that it can be said as a matter of law that no trier of fact acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt."[4]

Where the issue is whether entry was with intent to steal, this court has listed the types of surrounding circumstances that warrant concluding that entry was with intent to steal.[5] They include type of entry, manner of

[1] Sec. 943.10 (1), Stats. *See: State v. Hall* (1972), 53 Wis. 2d 719, 720, 193 N. W. 2d 653.

[2] *Taylor v. State* (1972), 55 Wis. 2d 168, 179, 197 N. W. 2d 805, quoting *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379.

[3] *Jensen v. State* (1967), 36 Wis. 2d 598, 607, 153 N. W. 2d 566, 154 N. W. 2d 769.

[4] *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183.

[5] *State v. Barclay* (1972), 54 Wis. 2d 651, 196 N. W. 2d 745, citing *State v. Holmstrom* (1969), 43 Wis. 2d 465, 476, 168 N. W. 2d 574, and *Strait v. State* (1969), 41 Wis. 2d 552, 562, 164 N. W. 2d 505.

entry, type of building entered, place of entry, time of entry, and defendant's conduct when arrested or interrupted.[6] In the case before us, where the issue is whether it was the defendant and Landerman who made the burglarious entry, we find the following evidence and surrounding circumstances probative and material:

*Place of apprehension.* Initially, the trial court was entitled to consider the fact that the defendant and Landerman were first observed by the police officers directly in front of the drugstore that was burglarized. The time was 3:05 a. m., an early morning hour of which this court has said that it is "after closing hours and in the early morning when the likelihood of interruption was at a minimum." [7] It is entirely reasonable to conclude that the breaking and entering of the pharmacy took place after closing hours and some time before 3 a. m.

*Flight from police.* The trial court was entitled to give consideration to the fact that when the defendant and Landerman first observed the marked squad car, they "stopped dead in their tracks" and then fled, each in a different direction, to avoid interrogation or apprehension by the approaching police officers. In cases dealing with intent to steal, this court described such knee-jerk reaction to the approach of police officers as seeking "to evade apprehension or arrest by the police." [8] That it is, and here was, and, as such, constitutes a material attendant circumstance.

*Pinholed flashlight.* The trial court could give consideration to the fact that the defendant, at 3:05 a. m. in front of the burglarized premises, had on his person a flashlight with pinholed foil covering the face or lens of the flashlight. While not a burglary tool within the

[6] *Id.* at page 654.

[7] *Id.* at pages 655, 656.

[8] *Id.* at page 656.

statutory definition,[9] such pinhole-pierced, foil-covered flashlight can reasonably be found to be a helpful aid to the burglarious search of a darkened drugstore or basement premises. The action of the defendant in seeking to throw away the specially equipped flashlight during his running away from the police officer can be considered in determining the purpose for which he was carrying it.

*Gloves and pillowcase.* The trial court was entitled to give consideration to the fact that defendant's companion, at 3:05 a. m. on a midsummer night, carried a gym bag containing one cotton glove, one leather glove and an empty pillowcase. It was not unreasonable to conclude that under these circumstances the unmatched gloves were used or usable to avoid leaving telltale fingerprints at the scene of a burglary, and that the empty pillowcase was intended as a container for stolen articles. Once again, the fact that the companion promptly put down the bag and its contents when he began his flight from the police is a fact to be given consideration in making a reasonable inference as to why the bag and its contents were brought to the scene of the crime.

*Nature of burglary.* The trial court had before it the nature or type of building burglarized, *i.e.*, a pharmacy. It had before it the fact that the only item taken in the burglary was a bottle of Robatussin A. C., an exempt drug.[10] The trial court also had before it the fact that it was the drug cabinets that were pried open, indicating that the intruders were primarily concerned with drugs

---

[9] *See:* Sec. 943.12, Stats., requiring a device to be "designed and adapted for use in breaking into" a building to be a burglary tool.

[10] Frederick Boris, owner of the pharmacy, testified that Robatussin A. C. is an exempt narcotic, one for which the purchaser must sign when he buys it, although a prescription is not required. He testified that it consists of codeine, antihistamine ephedrine and glycerolcoagulate, and can create a euphoric effect.

as the target of the burglary. The arresting officer noted needle marks on the arms of both defendant and Landerman. Landerman stated that he had been injecting "something" into his arms. The defendant stated that he had been using "jive" or heroin and was currently on a Methadone program. The nature of the building burglarized, the taking of the narcotic drug bottle, the prying open of the drug cabinets, coupled with the needle marks and statements of the defendant, combine to constitute a surrounding circumstance that the trial court was entitled to consider.

*Relatedness of explanation.* In a case where the defendants were found guilty on circumstantial evidence of the crime of burglary, this court commented that "the falsity and the weakness of the explanation [given by the defendants] could be considered." [11] In the case before us, Landerman's explanation of the defendant's presence in the area at the time involved was that they were going to visit a friend who lived nearby. Standing alone, even though the hour was 3:05 a. m., this could not be considered an implausible explanation. However, it gives added weight to circumstances such as the defendant and Landerman carrying a pinholed flashlight, two unmatched gloves and the empty pillowcase in the black bag. The trial court here could consider that an ordinary citizen does not normally go visiting equipped with a pinholed flashlight, one cotton glove, one leather glove and an empty pillowcase. [12] As this court has

[11] *State v. Johnson, supra,* footnote 2, at page 141, citing *Fowle v. State* (1879), 47 Wis. 545, 2 N. W. 1133.

[12] *Id.* at page 141, this court stating: ". . . the court could also consider that an ordinary citizen does not normally have five screw drivers under the front seat of his car, that some of the tools were of the type generally found in public garages and not ordinarily in private cars . . . ." (Citing *Ingalls v. State* (1880), 48 Wis. 647, 4 N. W. 785.)

said, "While these facts and circumstances, standing alone, are not sufficient to prove guilt, they are suspicious and of an incriminating nature and may be considered in view of the other circumstances." [13]

Giving consideration to the attendant circumstances relevant to the issue of guilt or innocence, the trial court was convinced beyond a reasonable doubt that the defendant was guilty of burglary. Giving consideration not to any one alone, but to all of the surrounding circumstances, the trial court concluded that the state had proved the defendant had entered and had burglarized the drugstore. The trial court found that it was convinced of the defendant's guilt beyond a reasonable doubt. On appeal this court does not retry the case on the facts in the record to determine if each of its members is convinced of the defendant's guilt beyond a reasonable doubt. [14] On this appeal our responsibility is to determine whether the circumstantial evidence is sufficient to sustain the finding of the trial court. [15] We hold that the circumstantial evidence was sufficiently strong and credible to convince the trial court beyond a reasonable doubt of the defendant's guilt and is sufficient to sustain the finding of guilt made by the trial court.

*By the Court.*—Judgment affirmed.

[13] *Id.* at page 141, citing *Vejih v. Redford* (1923), 182 Wis. 311, 196 N. W. 228.

[14] *Id.* at page 137.

[15] *Id.* at page 137, citing *State v. Schweider* (1959), 5 Wis. 2d 627, 94 N. W. 2d 154.