GILBERTSON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 35. Submitted under sec. (Rule) 251.54 June 5, 1975.—Decided June 30, 1975.*

(Also reported in 230 N. W. 2d 874.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

DAY, J. The question before us is whether the facts established at trial, together with reasonable inferences

drawn therefrom, were sufficient to prove beyond a reasonable doubt that the defendant entered the building with intent to commit a felony, to wit, criminal damage to property in excess of $1,000, thus constituting the crime of burglary. We conclude that the evidence is not sufficient and reverse.

The plaintiff in error Leonard Gilbertson (hereinafter "defendant") was charged in a criminal complaint issued August 24, 1973, with burglary in violation of sec. 943.10 (1) (a), Stats., in that he did, on or about August 22, 1973:

". . . intentionally enter the building of another, to wit: the generator room of the Shawano Paper Mill, Inc., without the consent of the person in lawful possession and with intent to commit a felony therein, to wit: cause criminal damage to the generators of the paper mill in excess of $1,000. . . ."

Following a hearing on September 4, 1973, the defendant was committed to Central State Hospital for determination of whether or not he was competent to stand trial. He was found competent. The defendant waived a jury trial and was bound over for a trial to the court. The trial was held on December 7, 1973. It was established that the defendant did not have permission to be on the premises in question. The main witness for the state was Elmer Jaeck, a night watchman and security guard for the Shawano Paper Mill. He testified he came on duty at about 6 p.m. on August 22, 1973, and in the late evening while making his rounds he came down near the hydroplant or power house, which was the building housing the generator. He was near there for the purpose of taking a reading of the river level and thought he saw something move over by the hydroplant. He went over to investigate and saw the defendant in the building through the open windows. He testified the defendant also saw him and then began shutting the windows. Then Mr. Jaeck came in one door of the building and noticed a

wooden-handled shovel in the generator. He pulled it out of the generator and threw it on the floor. He said he also noticed that the generator room had been cleaned out of everything that was not bolted down. Missing were a fire extinguisher, a bench, a small stool, a snow scraper, shovel, three rakes, a pipe, a pick, and other items. They had all been thrown into the flume or into the river.

Defendant went out one of the doors of the hydroplant and Mr. Jaeck went out the other. They met face-to-face on a small bridge. Mr. Jaeck said the defendant approached, "growling" at him, and they grappled with one another. The night watchman was carrying a stick and was told by the defendant to drop it or he would take it from him and cut his head open with it. Mr. Jaeck's testimony was that at this time he regarded the defendant as mentally unstable. He asked the defendant in a loud voice why he had done this and the defendant did not respond. Finally, the defendant dropped his hands to his side after they had tussled with each other on the bridge for five or six minutes. Mr. Jaeck told the defendant that the damage was done and if the defendant would give him a hand in cleaning up the mess, he would not even write it up. The defendant then began to help Mr. Jaeck retrieve the items from the water. Mr. Jaeck went to another building to get a rake to help reach some of the floating objects and while there, he told another employee to call some detectives and said that he had a "kook" down by the river. However, when Mr. Jaeck returned the defendant was gone. Mr. Jaeck admitted on cross-examination that he had not actually seen the defendant throw the objects into the water nor had he seen him put the shovel into the generator.

The state also called the plant engineer for Shawano Paper Mill, who testified that although he did not design or build the generator he designed and supervised the construction of the generator building and the installation of the generator. He also testified that the re-

placement cost of a generator would be in the realm of $100,000. He then testified as to the various types of damage which could result from the shovel being placed in the generator as follows:

"*Q.* The question is, what type of damage could be done to a generator with these type of items being thrown into the flume, specifically a shovel?

"*A.* Specifically a shovel. If a shovel went in, you have a fly wheel which is probably one thousand pounds or more. You probably have a rotating weight on that machine of about four thousand pounds. And it is travelling with a peripheral speed of about 2200 feet a minute. A shovel handle, taking a shovel handle in there and going in, if that handle would catch, it would break the handle, throw the shovel into, a good possibility of throwing the shovel handle into the field, either the stator field or the rotor field, tearing out windings of the generator, causing possible mechanical damage in addition to that."

At no time did he or any other witness testify as to the estimated dollar value on any of these types of damages that could have been caused by the shovel being put in the generator, but he did concede on cross-examination that a shovel could be placed in a generator in a way so that the damages would be minimal. The district attorney did ask him the following question:

"*Q.* What would it cost to replace this winding?"

However, the record shows that before the witness could answer the court interrupted with a question about another matter.

The defense rested without calling any witness and, following arguments to the court, a judgment of guilty was entered. The court ordered a presentence investigation and on December 27, 1973, sentenced the defendant to an indeterminate term not to exceed three years in the Wisconsin State Reformatory.

The defendant brings a writ of error to review the judgment, alleging insufficiency of the evidence. The

question is, was the evidence sufficient to convict the defendant of the felony of burglary? [1] In order to convict, the state must prove beyond a reasonable doubt that the defendant: (1) Intentionally entered the building, (2) without permission, and (3) with the intent to steal or commit a felony therein. It was not alleged that the defendant intended to steal anything once he had entered the Shawano Paper Mill. Rather, it was alleged that defendant intended to commit the felony of criminal damage to property in excess of $1,000.[2] Thus, it was necessary to show beyond a reasonable doubt that defendant entered the premises not only to commit criminal damage to property therein but intending that such damage would exceed $1,000. The defense does not argue that the defendant was not in the building, nor does it argue that he had consent to be there. The contention on this appeal goes only to the matter of the defendant's intent when he entered the building without consent. The defense's argument is, in effect, that when he entered the defendant did not intend to commit any criminal damage to property and that if he did, he did not intend that it would exceed $1,000.

There was no motion after verdict made in this case attacking the sufficiency of the evidence or raising any

---

[1] "943.10 **Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

"(a) Any building or dwelling; . . ."

[2] "943.01 **Criminal damage to property.** (1) Whoever intentionally causes damage to any physical property of another without his consent may be fined not more than $200 or imprisoned not more than 6 months or both. . . .

"(3) If the total property damaged in violation of this section is reduced in value by more than $1,000, the person may be fined not more than $1,000 or imprisoned not more than 5 years or both. For the purposes of this subsection, property is reduced in value by the amount which it would cost either to repair or replace it, whichever is less."

other alleged errors of the trial court. However, this does not waive the alleged error in the judgment. This court has held in *Finger v. State* (1968), 40 Wis. 2d 103, 108, 161 N. W. 2d 272, that while it is ". . . highly desirable that the appropriate motions be made after trial in both jury and nonjury cases, . . ." and such practice is to be commended, such motion is not mandatory to secure a review of the evidence in a nonjury criminal case. *See also: Massen v. State* (1969), 41 Wis. 2d 245, 163 N. W. 2d 616; *State v. Cleveland* (1971), 50 Wis. 2d 666, 184 N. W. 2d 899. The rule is codified in sec. 974.02 (5), Stats.[3]

The proper test for appellate review of the sufficiency of the evidence in a criminal case has been stated in *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808:

"While the state must prove defendant's guilt beyond a reasonable doubt, on appeal this court's review is limited to determining whether the evidence adduced, believed and rationally considered by a jury was sufficient to prove defendant's guilt beyond a reasonable doubt. Reversal is required only when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt."

This court has said, "This ultimate test is the same whether the trier of the facts is a court or jury." *Gaddis v. State* (1974), 63 Wis. 2d 120, 127, 216 N. W. 2d 527.

The issue in the present case is the defendant's intent or state of mind at the time of entering the building, not later when the felony may or may not have been committed within the building. *Ferguson v. State* (1969), 41 Wis. 2d 588, 591, 164 N. W. 2d 492. Quoting from 13

---

[3] "974.02 New trial. . . .

"(5) A motion for a new trial is not necessary to review errors on a trial to the court without a jury."

Am. Jur. 2d, *Burglary*, p. 352, sec. 52, this court said, in *Strait v. State* (1969), 41 Wis. 2d 552, 559, 164 N. W. 2d 505:

" 'Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.' "

*See also: Jacobs v. State* (1971), 50 Wis. 2d 361, 365, 366, 184 N. W. 2d 113.

The proper test was set forth by this court in *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379:

"The type of reasonable certitude required in criminal cases is moral certainty relating to the affairs of human conduct and grows out of informed experience with the common ways (mores) of man. It is based upon the certain constancy and uniformity in the free conduct of humans under given conditions or motives. Based upon long experience with the actions and motives of human nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. This is not to say that exceptions and possibilities may not exist but such possibilities in themselves do not prevent a person from forming a reasonable conviction beyond a reasonable doubt or to a moral certainty of the truth of a fact. This degree of certainty required to sustain a criminal conviction may be attained upon circumstantial evidence as well as upon direct evidence."

This is a case of first impression in Wisconsin on the proof required to establish burglary where the felony intended to be committed within the premises unlawfully entered is criminal damage to property. We turn to those cases which have interpreted intent to steal in charging burglary. This court has held that intent to steal may not be inferred from breaking and entering alone. *State v. Hall* (1972), 53 Wis. 2d 719, 193 N. W. 2d 653; *Bethards*

*v. State* (1970), 45 Wis. 2d 606, 173 N. W. 2d 634; *State v. Harris* (1968), 40 Wis. 2d 200, 161 N. W. 2d 385. This rule has been qualified to the extent that additional circumstances such as type of entry, manner of entry, type of building entered, place of entry, time of entry, and defendant's conduct when arrested or interrupted, can be sufficient to permit a reasonable person to conclude that the defendant entered with an intent to steal. *Fox v. State* (1973), 60 Wis. 2d 462, 466, 467, 210 N. W. 2d 722; *Raymond v. State* (1972), 55 Wis. 2d 482, 487, 198 N. W. 2d 351; *State v. Barclay* (1972), 54 Wis. 2d 651, 654, 655, 196 N. W. 2d 745; *State v. Holmstrom* (1969), 43 Wis. 2d 465, 476, 168 N. W. 2d 574; *Strait v. State, supra,* page 562.

It is not necessary to prove that the defendant had to or did break and enter the generating room; it includes the nonbreaking, unlawful entry, which was the case here. An intent to commit criminal damage to property will not be presumed from an unlawful entry upon the premises alone. The range of facts and circumstances which the court has found probative of and relevant to raising an inference of intent to steal would also become applicable in the case of intent to commit criminal damage to property. However, as this court said in *Strait v. State, supra,* at page 562:

"It can be said as a verity that the intent most often associated with an unlawful entry of a building is an intent to steal. Crime statistics universally recognize it. An unauthorized person in your home or at your place of work or business during nonbusiness hours without a rational explanation usually creates a belief the person is there with the intent to steal."

The evidence necessary to raise an inference of or to prove entry with intent to commit criminal damage to property can be shown by the facts and circumstances surrounding the event. Here, such intent must be derived

from the circumstantial evidence. As this court said in *State v. Shaw* (1973), 58 Wis. 2d 25, 29, 205 N. W. 2d 132:

"The circumstantial evidence must . . . be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility."

In the present case, the intent to commit the felony of criminal damage to property involves placing the shovel in the generator. The first question, then, is whether there is sufficient credible evidence to prove beyond a reasonable doubt that it was the defendant who put the shovel in the generator and, more particularly, whether the defendant intended to put the shovel in the generator when he unlawfully entered the generator room? There is no direct evidence on this issue. The night watchman admitted that he did not observe the defendant put the shovel in the generator, nor did he even see the defendant enter the building. However, we conclude that the totality of the circumstances surrounding this incident constitutes sufficient circumstantial evidence to raise the necessary inferences of intent and exclude every reasonable theory of the absence of that intent. First, the incident occurred late at night; secondly, the watchman made his rounds hourly and the shovel was not in the generator on his last check; thirdly, he saw no one else in the vicinity; fourthly, when he first saw the defendant in the generator room through the open windows, the defendant immediately began banging the windows shut; fifth, when Mr. Jaeck then entered the generator room, the defendant immediately left through another door; sixth, when Mr. Jaeck confronted defendant on the bridge the defendant threatened Mr. Jaeck as described above; seventh, when asked by Mr. Jaeck why he did it and asked to help clean up the mess, the defendant did so by helping retrieve the objects, then the defendant left the

premises when Mr. Jaeck went to get help. All of this raises a reasonable inference that defendant had thrown the objects into the water, which in turn raises a reasonable inference that he also put the shovel in the generator.

Viewing all this evidence, as the court must, in the light most favorable to the finding made by the trier of fact and, where more than one reasonable inference can be drawn from the evidence, following the inference that supports the finding, *Garrella v. State* (1973), 61 Wis. 2d 351, 353, 212 N. W. 2d 101, we conclude that the above-recited circumstantial evidence is sufficient to support the finding that defendant entered the building with intent to commit criminal damage to property.

The defense argued at the trial and on appeal that where criminal damage to property is charged as the felony element of burglary there must be proof of actual damages. We disagree. The felony charge of criminal damage to property is damage in excess of $1,000; however, the burglary statute requires only intent to commit a felony and that is equally true with the intent to commit the felony of criminal damage to property. The intent can be derived from surrounding facts and circumstances of an intent to commit the crime even though the crime itself may not actually be accomplished. In this respect, it is no different than the requirement of showing an intent to steal in a burglary case. The intent can be shown from the surrounding facts and circumstances without actually having shown the completion of a theft. The difference in the intent to steal and the intent to commit criminal damage to property, however, is important in this case. In the criminal intent to steal as part of the burglary charge, there is no amount or value of property that need be shown to complete the intent to steal charge, and the charge could be burglary whether the intent was to steal one dollar or $1,000; but here, to be a felony the intent must be shown to have been to commit criminal damage to property over $1,000. If it was under that

amount, it would merely be a misdemeanor and would not constitute a charge that would support the burglary count.

Sec. 943.01 (1) and (3), Stats., makes it clear that when the criminal damage to property is less than $1,000, the crime is a misdemeanor. It is true, as this court said in *State v. Gould* (1973), 56 Wis. 2d 808, 813, 814, 202 N. W. 2d 903, that:

> "A person need not foresee or intend the specific consequences of his act in order to possess the requisite criminal intent. . . . In addition, an accused is presumed to intend the natural and probable consequences of his acts voluntarily and knowingly performed. This presumption applies to the degree of harm. . . . Of course, since the presumption is a working tool, evidence of a contrary intent may be introduced to rebut the presumption."

On this record, it is impossible to determine what the natural and probable consequences of placing a shovel in the generator were. There is testimony of the possibility of tearing the windings out and causing other mechanical damage, but nowhere in this record is there even an estimate of what the windings or other possible damages would cost to repair or replace. The state's brief asserts that such damage is the equivalent of rendering the generator absolutely useless. But there is no factual foundation for such an assertion anywhere in this record. Since criminal damage to property becomes only a felony when such damage exceeds $1,000, it must, therefore, be shown beyond a reasonable doubt that the defendant entered the power house intending to commit criminal damage to property in excess of $1,000. On the status of this record, it is as reasonable to believe that since in fact the testimony is that no damage was done by putting the shovel in the generator that the defendant intended to cause criminal damage to property in an amount less than $1,000. Such intent, of course, to cause less than $1,000 damage would be an intent to commit a misdemeanor, not a felony, and would, therefore, not sustain the conviction in this case. There was no evidence as to what

amount of damage could be expected to flow from the defendant's act and therefore there was no way to determine what the natural and probable consequences of his act of putting the shovel into the generator would be. This court said in *State ex rel. Kanieski v. Gagnon, supra,* at page 117:

"A . . . [trier of fact] may draw reasonable inferences from facts established by circumstantial evidence, but it may not indulge in inferences wholly unsupported by any evidence. The inferences must be supported by facts, and the defendant cannot be convicted on mere suspicion or conjecture."

The extent of potential damage here is not a matter of common knowledge, of which the court could take judicial notice, *Frederick v. Hotel Investments, Inc.* (1970), 48 Wis. 2d 429, 433, 180 N. W. 2d 562, nor is it a fact which is capable of immediate and accurate determination by resort to easily accessible sources of information. *Robison v. Borkenhagen* (1964), 25 Wis. 2d 408, 410, 130 N. W. 2d 770. We conclude, therefore, that the evidence adduced at the trial is insufficient to convict the defendant.

*By the Court.*—Judgment reversed and defendant discharged.

ROBERT W. HANSEN, J. *(dissenting).* The plaintiff in error (hereinafter defendant) challenges his conviction on a charge of unlawful entry, without consent of the owner, with intent to commit a felony.[1] The sole ground for such challenge is that the evidence, together with reasonable inferences drawn therefrom, was not sufficient to establish beyond reasonable doubt that he entered the generator room of the paper mill with intent to commit the felony offense of criminal damage to property

---

[1] Sec. 943.10 (1), Stats., provides: "(1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

"(a) Any building or dwelling; . . ."

in excess of $1,000.[2] The issue raised is not whether he did in fact commit criminal damage in such amount, but whether, at the time he entered the building without consent of the owner, he intended so to do. The defendant did not take the witness stand at the time of trial, so the evidence as to his intent at the time of entry is circumstantial, but circumstantial evidence can establish intent at the time of entry.[3]

While intent to steal or commit a felony will not be inferred from the fact of entry alone,[4] proof of "additional circumstances" may be sufficient to permit the trier of fact to find an intent to steal or commit a felony.[5] Our court has held that: "Such additional circumstances include the type, manner, place and time of entry; type of building; the identity of the accused; and defendant's conduct when interrupted." [6]

In the case before us, as to "type, manner, place and time of entry," we have the defendant entering the gen-

---

[2] Sec. 943.01, Stats., provides: "(1) Whoever intentionally causes damage to any physical property of another without his consent may be fined not more than $200 or imprisoned not more than 6 months or both.

". . .

"(3) If the total property damaged in violation of this section is reduced in value by more than $1,000, the person may be fined not more than $1,000 or imprisoned not more than 5 years or both. For the purposes of this subsection, property is reduced in value by the amount which it would cost either to repair or replace it, whichever is less."

[3] *Raymond v. State* (1972), 55 Wis. 2d 482, 486, 198 N. W. 2d 351, this court holding: "Most of the above evidence is circumstantial insofar as it relates to proof of intent to steal. However, it frequently has been held that circumstantial evidence can be sufficient to support a finding of guilt." (Citing *State v. Heidelbach* (1971), 49 Wis. 2d 350, 360, 182 N. W. 2d 497.)

[4] *Id.* at page 487, citing *Strait v. State* (1969), 41 Wis. 2d 552, 164 N. W. 2d 505.

[5] *Id.* at page 487.

[6] *Id.* at page 487, citing *State v. Barclay* (1972), 54 Wis. 2d 651, 654, 196 N. W. 2d 745.

erator building late in the evening, long after the regular employees had left for the day. The night watchman and security guard was elsewhere on the premises making his regular patrol.[7] Thus the building was empty and unguarded when the defendant made his illegal entry. As to the "type of building," the generator building contained, at the time of entry, a $100,000 generator and the following items of personal property: Fire extinguisher, bench, small stool, snow scraper, three rakes, pipe and pick, a "half-moon" rake and a shovel. As to the "identity of the accused," the testimony of the paper mill manager was that the defendant was not an employee of the paper mill on the date involved and did not have permission to enter the paper mill property.

However, in this case, it is the "conduct of the defendant when interrupted," and prior thereto that is completely persuasive as to his intent at time of illegal entry. The night watchman testified that, late in the evening, he came near the building housing the generator to take a river level reading. He thought he saw something move near the generator building. He went over to the building and saw the defendant through the window. When he went in one door, the defendant ran out of another door. The watchman pursued him and caught up to him at a small bridge. Defendant told the watchman to drop a stick he was carrying or defendant would take it from him and break his head open with it. The night watchman asked defendant, "Why the hell did you do this?" The defendant made no response. The defendant and the watchman "tussled" on the bridge for five or six minutes. The struggle ended, the watchman said, "The damage is done," and asked defendant to "give a hand in cleaning up the mess." Defendant did begin to help the watchman retrieve from the river the equipment that had

---

[7] The night watchman testified that he had 15 stations in his round, including the various buildings, and that he made his round every hour during his shift.

been thrown into the flume from the generator room. However, when left alone at the river, the defendant fled.

The pieces of equipment which the watchman and defendant "fished out" of the river were from the generator room. They had been tossed into the flume leading from the room to the river. The night watchman testified that thus thrown into the flume were the fire extinguisher, bench, stool, snow scraper, rakes, pipe and pick. In fact, all pieces of equipment, except one, were thus disposed of. The one exception was the shovel. When the watchman entered the generator room, he noticed that the wooden-handled shovel was pushed into the generator. He pulled it out of the generator and threw it on the floor and left to pursue the defendant.

It is from these "additional circumstances," plus the fact of illegal entry, that the trier of fact was to draw a reasonable inference as to the intent of defendant at the time of entry. As this court has said: "While intent is a state of mind, it is not to be determined apart from the actions of the person involved." [8] Thus, the state of mind or intent may ". . . reasonably be ascertained from the acts and conduct of a defendant, and the inferences fairly deducible from the circumstances." [9]

Defense counsel suggests two inferences as to intent upon entry as reasonably based on these surrounding circumstances, plus the fact of illegal entry. The first, as stated in defendant's brief, is that: "It might well have been that the defendant was simply looking for a dry place to sleep." That would hardly explain tossing down the flume the fire extinguisher, bench, stool, snow scraper, rakes, pipe and pick. The night watchman testified that the generator room had been "cleaned out" of everything that "wasn't bolted down"—except of course for the

---

[8] *Jacobs v. State* (1971), 50 Wis. 2d 361, 365, 366, 184 N. W. 2d 113. (Citing *Le Barron v. State* (1966), 32 Wis. 2d 294, 145 N. W. 2d 79.)

[9] *Id.* at page 366, citing *Strait v. State, supra,* footnote 4.

shovel shoved into the generator. That goes well beyond conceivably likely or reasonable preparations for slumber. The second possible inference, also set forth in defendant's brief, is that: ". . . if he [the defendant] did place the shovel in the generator, that he had the intent to damage it [the shovel]." But, if the defendant desired to destroy the shovel, as he had disposed of all other movable items in the room, he could and would simply have tossed it into the flume, along with the other pieces of furniture and equipment. When he jammed the wooden-handled shovel into the $100,000 generator, it is not reasonable, under these circumstances, to infer that he intended to damage a $10 shovel. It is certainly a more reasonable inference that, when he put the shovel into the generator and left it there, he intended to damage or destroy the $100,000 generator.

Given the fact of illegal entry, and these additional circumstances, the trial court drew the inference that the defendant, in placing the shovel in the generator and leaving it there, intended to damage or destroy the $100,000 generator, and determined that his intent at time of his illegal entry was to commit criminal damage in an amount in excess of $1,000. The plant engineer, who had installed the generator, testified that a shovel placed in a generator, and left there, could cause damage by "tearing out windings of the generator, causing possible mechanical damage in addition." The question here is not whether damage in excess of $1,000 was actually done to the generator, particularly not where the predictable result of leaving a shovel in a generator was interrupted by the arrival of the night watchman who removed the shovel from the generator. Rather the question is solely as to what the defendant intended to do. Defendant submits that, even with a shovel left in a generator, there is no proof here that the cost of replacing torn out windings and repairing mechanical damage would be in excess of $1,000. However, the question at issue

remains that of what the defendant intended to accomplish, not what he did accomplish by what he did. It is an entirely reasonable inference on this record that, when the defendant entered the generator room, he intended to destroy everything in it, insofar as he was able to do so. He executed this intent by taking every disposable or movable item of equipment or furniture and throwing it into the flume leading to the river—except for the shovel. This one item of movable property he shoved into the generator and left there. Having disposed of the movable properties, he attacked the one immovable object within the room. It is an entirely reasonable inference, as the trier of fact determined, that, as to this second phase of this project of total destruction of things of value in the room, the defendant, at the time of his illegal entry, intended to totally damage or destroy the $100,000 generator to the outer limit of his ability so to do. Reasonable inferences drawn from the evidence can support a finding of fact, and, in reviewing such evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding, with the inference that supports the finding the one that must be adopted.[10] In the case before us, the writer would find it an entirely reasonable inference from the evidence and circumstances here that this defendant illegally entered these premises with intent to commit a felony, that of criminal damage to property in excess of $1,000. In fact, that appears to be the only reasonable inference to be drawn and the only reasonable conclusion to be reached. The writer would affirm.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

[10] *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. (Cited and quoted in *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 116, 194 N. W. 2d 808.)